STATE of Colorado, DEPARTMENT OF NATURAL RESOURCES, DIVISION OF WATER RESOURCES, STATE ENGINEER, et al., Appellants and Cross-Appellees,

v.

SOUTHWESTERN COLORADO WATER CONSERVATION DISTRICT, et al., Appellees and Cross-Appellants,

and

Northern Colorado Water Conservancy District, et al., Appellees.

No. 79SA38.

Supreme Court of Colorado, En Banc.

July 18, 1983.

As Modified on Denial of Rehearings Nov. 7, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Dennis M. Montgomery, William A. Paddock, Asst. Attys. Gen., Denver, for appellant and cross-appellee State of Colo., Dept. of Natural Resources, Div. of Water Resources, State Engineer.

Stephen T. Williamson, Judy S. Howard, Louisville, for appellants and cross-appellees Bluepond Associates, Stonybrook Associates, Taskmaster Trust, Wet Rock Trust, Trout Creek Associates, Dexter Enterprises, Amity Associates, Tabernash Enterprises,

New Colorado Associates, New Aries Associates, Consumer Ventures, Markline Ventures, Trident Mesa Ventures, Paradox Associates, Elk Creek Ventures, Kadota Enterprises, East Park Associates, Starglaze Enterprises, Pinerose Associates, Harlan-Bismuth Associates.

Welborn, Dufford & Brown, Robert F. Welborn, William C. Robb, Denver, for appellants and cross-appellees CF & I Steel Corp., Trujillo Creek Cattle Co., Open Circle N Ranch.

Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, Denver, for appellants and cross-appellees Colorado Pacific Aztec, Colorado Pacific Energy.

Holme Roberts & Owen, Kenneth J. Burke, Kathleen M. Kulasza, Steven B. Richardson, Denver, for appellant and cross-appellee Nedlog Technology Group.

Moses, Wittemyer, Harrison & Woodruff, P.C., Raphael J. Moses, David L. Harrison, James R. Montgomery, Timothy J. Beaton, Boulder, for appellants and cross-appellees Amax, Inc., City of Arvada, Banker's Trust, City of Boulder, Colorado-Ute Elec. Association, Inc., Denver Southeast Suburban Water and Sanitation Dist., Douglas Park, Ltd., City of Federal Heights, Genessee Water and Sanitation Dist., Highland Ditch Co., Inverness Water and Sanitation Dist., Robert D. Lindner, Marathon Oil Co., Mission Viejo Co., South Adams County Water and Sanitation Dist., Golf Host West, Inc., Thunderbird Water and Sanitation Dist., Trailwood North, City of Trinidad, Union Oil Co.

Holland & Hart, John U. Carlson, Charles M. Elliott, A.B. Ferguson, Jr., John H. Land, Denver, for appellants and cross-appellees Adams Rib Ranch Corp., Atlantic Richfield Co., Blackland Properties, Inc., Chevron Shale Oil Co., Chevron U.S.A. Inc., J. Rathbone Falck, Goldsmith Metropolitan Dist., Robert Knapp, Koppers Co., Inc., Nu-West Development Corp., Roy H. Ott, Jr., Rio Grande Water Users Ass'n, Stearns-Roger Corp., Valley Country Club, City of Westminster.

Jimmie Joe Honaker, P.C., Longmont, for appellant and cross-appellee Big Elk Meadows Ass'n.

Saunders, Snyder, Ross & Dickson, P.C., Glenn G. Saunders, Denver, for appellants and cross-appellees Bob Johnston, Jr., AZL Resources, Inc., The Bessemer Irrigation Ditch Co., Cherokee Water Dist., Cimarron Corp., City of Fountain, Coppa Cattle Co., Sweetwater Development Co., Adolph Coors Co., Carolyn Allabashi, American Medical Center, Arapahoe County Airport, Bear Creek Development Co., Brannan Sand and Gravel, Daniel F. Burns, Cherry Hills Country Club, Denver Turf Farms, Lester A. Dixon, Bruce Dixon, Joann Dixon Hansen, East Cherry Valley Water & Sanitation Dist., Alfreda Guy, Hewlett-Packard, John Madden Co., City of Loveland, Loveland Ready Mix Concrete Co., Leonard Loukonen, Reino Loukonen, Town of Lyons, W. Everet Mellema, Orr Construction Co., Penta, Inc., Perry Pine Area Homeowners, Porter Memorial Hosp., Presbyterian Medical Center, Richlawn Turf Farms, Inc., Smoky Hills Land Co., South Cherry Creek Land Co., Walter Stonehocker, Swedish Medical Center, Joseph B. Thomas, Willows Water Dist., Woodside, Ltd., YMCA of the Rockies, Edward T. Young, Jr., Southwest Properties, Copper Mountain and Copper Mountain Water & Sanitation Dist., Nine Mile Ranch, Peter Jaffe, Dean A. Stone, David L. Thompson.

Wayne D. Williams, Michael L. Walker, Henry C. Teigen, Anne R. McGee, Denver, for appellant and cross-appellee City and County of Denver (Board of Water Commissioners).

Hannon, Stutz, Dyer & Miller, Steven M. Hannon, Denver, for appellants and cross-appellees City of Wheatridge, Town of Breckenridge.

Dept. of Justice Land & Natural Resources Div., John R. Hill, Jacques B. Gelin, Washington, D.C., for appellant and cross-appellee United States of America.

Donald A. Carpenter, Greeley, for appellant and cross-appellee Paradise Oil, Water and Land Development, Inc.

Maynes, Bradford & Shipps, Frank E. Maynes, Sara Duncan, Durango, for appellee and cross-appellant Southwestern Colorado Water Conservation Dist.

Fairfield & Woods, Charles J. Beise, Kevin B. Pratt, Howard Holme, Denver, for appellee and cross-appellant Southeastern Colorado Water Conservancy Dist.

Delaney & Balcomb, P.C., Scott Balcomb, Pamela H. Prescott, Glenwood Springs, for appellees and cross-appellants Colorado River Water Conservation Dist., Glen Schmidt, Betty Jo Schmidt, Jack E. Schmidt, Benton Land and Livestock Co., Merrill Hastings and Ben Wurtsmith, Stone Creek Co., Grouse Mountain at Vail, Ltd., Eagle-Vail Metropolitan Dist., Benchmark at Beaver Creek, Avon Metropolitan Dist., Fred Green, June Creek Ranch Co., Crested Butte Water and Sanitation Dist., Leonard Horn.

Donald H. Hamburg, Glenwood Springs, for Colorado River Water Conservation Dist.

Steinmark & Lawrence, Kim R. Lawrence, Greeley, for appellee and cross-appellant High Plains Water Users Ass'n.

Davis, Graham & Stubbs, John M. Sayre, Robert V. Trout, Denver, for appellees Northern Colorado Water Conservancy Dist., Municipal Subdistrict, Northern Colorado Water Conservancy Dist., E.I. duPont DeNemours & Co., Ensign Bickford Co., Colorado Water Protective and Development Ass'n, Purgatoire River Water Conservancy Dist., John T. Oxley.

Mattlage, Maus & Lettunich, Karl P. Mattlage, John A. Vanderbloemen, Steamboat Springs, for appellees County of Routt, Colo.

Fischer, Brown, Huddleson & Gunn, Ward H. Fischer, Steven B. Ray, Fort Collins, for appellees Jackson County Water Conservancy Dist., Cache La Poudre Water Users Assoc., City of Fort Collins, Colo., Upper Yampa Water Conservancy Dist., Thompson River Water Users Assoc., The City of Brighton, Colo.

Sherman & Howard, Gary L. Greer, Wendy J. Busch, James M. King, Denver, for appellees Elysian Corp., c/o Coventry Development Corp., Royal Crest Jersey Farms, Inc., Wheaton College, Keystone, a div. of Ralston-Purina Co., a Missouri corp., The New Jersey Zinc Co., a div. of GW Natural Resources Group, Lazy EH Ranch, Lincoln Park West Metropolitan Dist., LPE Estates, Inc., Annuity Board of the Southern Baptist Convention, Lincoln Property Co.

Kelly, Stansfield & O'Donnell, Timothy J. Flanagan, Denver, for Public Service Co. of Colo.

Robert F. Moreland, Boulder, for Vidler Tunnel Water Co.

Holme, Roberts & Owen, Glenn E. Porzak, Denver, for Terracor.

McMartin, Burke, Loser & Fitzgerald, P.C., Herbert C. Phillips, Englewood, for South Suburban Metropolitan Recreation and Park Dist.

Geddes, MacDougall, Geddes & Paxton, P.C., M.E. MacDougall, Colorado Springs, Bruce B. Lassman, Castle Rock, for Town of Castle Rock.

Geddes, MacDougall, Geddes & Paxton, P.C., M.E. MacDougall, Colorado Springs, for F.B. Rooke & Sons, Chess-Shoemaker Ranches, Inc., J. Frank, Hazel J. Dilley, Arthur W. Dilley and Laurin Dilley, d/b/a A.W. Dilley & Co., John E. and Mable M. Wilson, Jim and Ann Like, C. Roy and Beneta Canterbury.

Goluba & Shenk, Nicholas W. Goluba, Jr., Glenwood Springs, for J. Golden Bair.

Musick & Cope, Joseph A. Cope, Boulder, for City of Northglenn, Colo.

Williams, Turner & Holmes, Anthony W. Williams, Grand Junction, for George R. Webster, Elizabeth M. Webster.

Musick & Cope John D. Musick, Jr., Boulder, for City of Aspen, Colo., Board of County Comm'rs of the County of Pitkin, Colo.

Ralph N. Wadleigh, La Junta, for The Holbrook Mut. Irrigating Co., The Las Animas Consol. Canal Co.

Floyd K. Murr, Walsenburg, for Town of LaVeta, Colo.

Moses, Wittemyer, Harrison & Woodruff, P.C., Raphael J. Moses, Boulder, for William P. McKinnel.

Robert G. Stovall, Eads, for County of Kiowa, Colo.

Mitchell & Hamano, P.C., Rexford L. Mitchell, Rocky Ford, for Avondale Water & Sanitation Dist., St. Charles Mesa Water Assoc., Colorado City Water & Sanitation Dist. a/k/a Colorado City, Metropolitan Dist., Salt Creek Water & Sanitation Dist., Pueblo West Metropolitan Dist., Greenhorn Mountain Water Association, Inc., Arkansas Valley Ditch Ass'n Lower Arkansas Valley Council of Governments, Board of County Commissioners of the County of Otero, Colo., City of Rocky Ford, Colo., Town of Cheraw, Colo., West Grand Valley Water Co., South Swink Water Co., Valley Water Co., Bent's Fort Water Co., Eureka Water Co., Hilltop Water Co., Patterson Valley Water Co., East End Water Co., West Holbrook Water Co., Fayette Water Ass'n, South Side Water Co., Beehive Water Co., Schlegel Water Co., Riverside Water Co., Hancock Water Co., Newdale-Grand Valley Water Co., Vroman Water Co., Tucker Farms, Town of Swink, Colo., Town of Manzanola, Colo., Holbrook Center Water Co., Timberlake Grazing Ass'n., 96 Pipeline Co., Wilhelm Feedlots, Inc.

Lutz & Berkowitz, J.E. Lutz, Denver, for H.G. Isbill, Eleanor L. Isbill.

Dufford, Waldeck & Williams D.J. Dufford, Robert I. Williams, Grand Junction, for City of Grand Junction, Marie Scott, Lorraine Harney, Charles Scudder, Elizabeth A. Scudder, Holly Scudder Difani, Jean Scudder, Carolyn Miller, Richard B. Scudder.

George A. Epperson, Donald F. McClary, Edward L. Zorn, Douglas R. Vannoy, Fort Morgan, for Bijou Irrigation Co., Bijou Irrigation Dist., Riverside Irrigation Co., Riverside Irrigation Dist., Jackson Lake Co., Ft. Morgan Reservoir and Irrigation Co., Weldon Valley Ditch Co., Deuel and Snyder Ditch Co., Snyder-Smith Ditch Co., Johnson-Edwards Co., Tremont Ditch Co., Lower Platte and Beaver Ditch Co., Union Mutual Ditch Co., Tetsel Ditch Co.

Holme Roberts & Owen, Kenneth J. Burke, Michael F. Browning, Denver, for Brush Creek and Eagle River Co.

Marshall McClung, Fairplay, for County of Park, Colo.

Akolt, Dick & Akolt, Robert A. Dick, John P. Akolt, III Denver, for The Farmers Reservoir & Irrigation Co.

Carl M. Shinn, Lamar, for Amity Mutual Irrigation Co., District 67 Irrigation Canals Assoc.

Thomas J. Aron, Jr., Greeley, for Town of Fairplay, Colo.

Friedman, Hill & Robbins, David W. Robbins, Denver, for Water In Our Wells (W.O. W.).

Stephen M. Mathis, Montrose, for Wayland Phillips.

Banta, Hoyt, Malone & Banta, P.C., Paul A. Linton, Englewood, for Cherry Creek School Dist. # 5.

William E. Bohlender, Greeley, for City of Greeley, Water & Sewer Bd. of the City of Greeley.

Holme Roberts & Owen, Kenneth J. Burke, Marilyn G. Alkire, Michael F. Browning, Denver, for Western Water Resources, Phillips 1527, Techtrack, New Leaf Nursery, Catherine H. Anderson, Brush Creek and Eagle River Co.

Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, James L. Gallogly, Denver, for Arapahoe Water & Sanitation Dist., Bancroft Water & Sanitation Dist., Bellview Green Ltd., Box Elder Water & Sanitation Dist., Castle Pines Metropolitan Dist., Greenwood Plaza Water Dist., Silver Heights Water & Sanitation Dist., Pine Meadow Tree Farm, Country Homes Land Co., Columbine Lake Water & Sanitation Dist., Vail Intermountain Water Dist., Durango Ski Corp., Purgatory Water & Sanitation Dist., Ft. Lyon Canal Co., Spady Bros., River Canyon Ranch Co.

Criswell & Patterson, Anthony Gary Bell, Englewood, for Titan Road I Land Inv. Co., Harold F. Hurst, Sheila K. Primm Hurst, Donald Rossi, Olga Safranek, Frank Safranek, Robert J. Safranek, Alan Safranek, Rosann Safranek.

Musick & Cope Stephen T. Williamson, Boulder, for Buffalo Park Development Co.

Gorsuch, Kirgis, Campbell, Walker & Grover, Keith M. Crouch, Bradford C. Berge, Denver, for Castle Oaks Corp., F. Burr Betts, Charles B. Henderson.

Mattlage, Maus & Lettunich, Karl P. Mattlage, Steamboat Springs, for Steamboat Lake Water Dist.

Kenneth A. Baker, Salida, for Upper Arkansas Water Conservancy Dist.

Wade & Blackburn, Oakley Wade, Las Animas, for George C. Camilli, Neil J. Davidson, Hasty Water Company, Inc., McClave Water Association, Inc., May Valley Water Association, Inc., Emery Cass, Bernice Cass, Bent County Farm Bureau.

Graves and McGill, Nicholas Magill, Steamboat Springs, for Routt County Cattlemen's Ass'n, Elk River Citizen's Ass'n, Forrest Warren, M.W. Carver, William B. May, Raymond Gray, John E. Sandelin, Iva Catherine Sandelin, Richard P. Warrick, Florence E. Warrick.

Kutak, Rock & Huie, James E. Thompson, Denver, for Edward B. Coughlin.

Johnson, McLachlan & DiCola, Larry Stutler, Lamar, for John Smartt Ranch, Inc., Harley J. Koeller, Wesley Splitter, Buffalo Mut. Irr. Co.

Britt C. Anderson, Denver, for Henry Clay Kimbrough.

Andersen & Gelhausen, P.C., S. Ford Andersen, Lamar, for Herb Reyher, d/b/a Reyher Enterprises, Inc.

Maynes, Bradford & Shipps, Frank E. Maynes, Durango, for La Plata Water Conservancy Dist., Pine River Irr. Dist., Dolores Water Conservancy Dist., Mancos Water Conservancy Dist., San Miguel Water Conservancy Dist., Summit Irr. and Reservoir Co., F & I Scott & Co., John Schmitt, Robert K. Taylor, Arthur Isgar, Charles M. Rogers, Noland Alexander, Rodger Ives, Tom Gilliland, Charles M. McAfee.

Maynes, Bradford & Shipps, Frank E. Maynes, Durango, McDaniel & Yates, L.W. McDaniel Gerald B. McDaniel, Durango, for Florida Water Conservancy Dist.

Robert L. Tibbals Aurora, Horn, Anderson & Johnson, Louis Johnson, Colorado Springs, for City of Colorado Springs, City of Aurora.

Henry, Cockrell, Quinn & Creighton, Benjamin L. Craig, Denver, for The Consolidated Mut. Water Co., Douglas County School Dist. RE–1, Lucas Wilson.

Hugh R. Warder, Glenwood Springs, for Ronald Kirby, Frank Satterfield.

Broadhurst & Petrock, P.C., Kenneth L. Broadhurst, Denver, for City of Thornton by its Utilities Bd.

Mountain States Legal Foundation, Kea Bardeen, William H. Mellor, III, Denver, for Mountain States Legal Foundation.

Welborn, Dufford & Brown, Robert F. Welborn, William C. Robb, Debra R. Lappin, Denver, for Committee to Defend Your Private Water.

George Rosenberg, Vail, Colo., for County of Eagle, Colorado, Vail Associates, Inc., Beaver Creek Metropolitan Dist.

Dominick Law Offices, David D. Dominick, Denver, for Perry Park Water and Sanitation Dist.

Mincer & Hartert, Neil S. Mincer, Lawrence M. Mincer, Michael E. Doyle, Glenwood Springs, Colo., for Nick Alfred Strubi Union Oil Co. of California.

Holland & Hart, John U. Carlson, Charles M. Elliott, John H. Land, Lawrence L. Hooper, Jr., Denver, for Ruth H. Brown, Twin Lakes Reservoir and Canal Co.

John A. Hughes, Montrose, for Colorado-Ute Electric Ass'n, Inc. of Montrose, Colo.

Leavenworth, Patrick & Lockhead, P.C., Loyal E. Leavenworth, Kevin L. Patrick, Glenwood Springs, for Town of Eagle, Colo.

Musick & Cope, Boulder, for Vail Village West Water & Sanitation Dist.

Klingsmith & Associates, P.C., P.C. Klingsmith, Gunnison, for Upper Gunnison Water Protection Authority, a Colorado corp., Dr. Robert B. Willey; Dr. Ruth L. Willey, Soderquist Ranches, Inc., a Colorado corp., Frank B. Meaker & Sons, Jim Lazzeri, John R. Long, Town of Crested Butte, Colorado, a Municipal corp., Alvin O. Berg;

Vera Berg, John W. Nemanic; Joseph M. Nemanic, Lyle T. McNeill; Mildred McNeill, Riverbend Homeowners' Ass'n, Inc., a Colorado corp., Riverbend Subdivision, E.L. Hilt; V. Pauline Hilt, Cranor, Inc., a Colorado corp., Fletcher Corporation, a Colorado corp., Lands End Co., a Colorado corp., Robert Bullington, Esten B. Orme, Butte Rock Ranches, Inc., a Colorado corp., Town of Lake City, Colorado, a Municipal corp., The Corporation of The Rocky Mountain Biological Laboratory at Gothic, a Colorado corp., P & J Vader Ranch, a Partnership, Gertrude Vader; Paul H. Vader; Anne Marie Vader, Jean Lee Vader; Mark Vader; Harry Vader; Ina Fay Vader, Jack McLain; Louise McLain, Duane Phelps; Donna P. Phelps, August Nicolas; Octave Nicolas; Paul Nicolas.

LOHR, Justice.

This is an appeal from the judgment of the special water judge appointed by this court to decide questions of law common to numerous applications for determinations of conditional water rights in nontributary ground water[1] outside the boundaries of

1. As discussed later, some of the applications involve tributary ground water. Our appointment of the special water judge, however, was occasioned by the need to resolve fundamental questions concerning the claims to nontributary ground water. *Southeastern Colorado Water Conservancy District v. Huston,* 197 Colo. 365, 593 P.2d 1347 (1979).

2. A definition of some terms as used in this opinion will prove helpful. "Ground water" or "underground water" means "any water not visible on the surface of the ground under natural conditions." *See* section 37–90–103(19), C.R.S.1973. In the development of our water law, we have traditionally classified ground water as "tributary" or "nontributary" to a natural stream. *See* Note, *A Survey of Colorado Water Law,* 47 Denver L.J. 226, 308 (1970). Nontributary ground water is that ground water not in or tributary to a natural stream within the meaning of section 37–92–103(13), C.R.S.1973. Tributary ground water consists of "that water in the unconsolidated alluvial aquifer of sand, gravel, and other sedimentary materials, and all other waters hydraulically connected thereto which can influence the rate or direction of movement of the water in that alluvial aquifer or natural stream." *See* section 37–92–103(11), C.R.S.1973. The period of time

designated ground water basins in all seven water divisions in the State of Colorado. We affirm in part, reverse in part, and remand the cases to the respective divisions in which they were filed, with directions.

## I. PROCEDURAL HISTORY

Late in December of 1978, four separate groups of claimants filed applications for determinations of conditional water rights in tributary and nontributary ground water[2] in some or all of Colorado's seven water divisions. Numerous objectors appeared and filed statements of opposition to the applications. In January 1979 certain of the objectors brought an original proceeding in this court under C.A.R. 21 requesting that the cases be consolidated and assigned to a single water judge under the superintending control vested in this court by *Colo. Const.* Art. VI, § 2, cl. 1 for the purpose of resolving questions of law basic to the disposition of all the applications. We issued a rule to show cause why that relief should not be granted, and later made the rule absolute in *Southeastern Colorado Water Conservancy District v. Huston,* 197 Colo. 365, 593 P.2d 1347 (1979).

that will ensue from the removal of ground water until that removal affects the flow of a natural stream is critical in determining whether the ground water is tributary or whether the effect on the stream is so delayed that the water is in effect nontributary. *District 10 Water Users Ass'n v. Barnett,* 198 Colo. 291, 599 P.2d 894 (1979); *Kuiper v. Lundvall,* 187 Colo. 40, 529 P.2d 1328 (1974); *see Hall v. Kuiper,* 181 Colo. 130, 510 P.2d 329 (1973). We have previously noted that particular ground water cannot readily be classified as tributary or nontributary and that the distinction in some cases is only a matter of degree. *E.g., Pioneer Irrigation Districts v. Danielson,* 658 P.2d 842, 845 (Colo.1983). Although the distinction lacks a satisfying scientific sharpness, it often has critical legal importance, as the present opinion will demonstrate. For discussions of the interrelation of ground water— both tributary and nontributary—and tributary surface water, *see generally* Harrison and Sandstrom, *The Groundwater—Surface Water Conflict and Recent Colorado Legislation,* 43 U. of Colo.L.Rev. 1 (1971); Moses, *Basic Groundwater Problems,* 14 Rocky Mtn.Min.L.Inst. 501 (1968); Moses, *The Law of Ground Water— Does Modern Buried Treasure Create a New Breed of Pirates?,* 11 Rocky Mtn.Min.L.Inst. 277 (1966).

To implement the rule, we assigned to the special water judge "all matters connected with the pending applications of [applicants John Huston, Allan Leaffer and Wallace Yaffe, d/b/a various John Doe and Richard Roe Joint Ventures; Nedlog Technological Group (Nedlog); Colorado Pacific Energy and Colorado Pacific Aztec (Colorado Pacific); and Bob Johnston, Jr. (Johnston)] which are the subject of this proceeding and which are on file with any of the water clerks of the state." 197 Colo. at 376, 593 P.2d at 1354. The chief justice designated Honorable M.O. Shivers, Jr., as the special water judge and assigned him temporarily as an additional water judge in each of the seven water divisions for the purpose of the proceeding. *See* section 37–92–203(2), C.R.S.1973.

The threshold question submitted to the special water judge was whether nontributary waters in Colorado are subject to appropriation (Q1). In the event the judge should answer that question in the affirmative, we directed that he answer the following additional questions of law (Q2–Q5):

Q2. By what authority can such waters be appropriated?

Q3. Can non-tributary waters outside the boundaries of designated ground water basins be appropriated by persons having no property interest in the surface?

Q4. Can non-tributary waters outside the boundaries of designated ground water basins be appropriated for use by persons other than the claimant or those whom the claimant is authorized to represent?

Q5. Can applications for non-tributary waters outside the boundaries of designated ground water basins be filed (a) without first obtaining permits from the State Engineer and, if so, (b) without first applying for such permits?

197 Colo. at 369–70, 593 P.2d at 1349.

The special water judge caused notice to be given to all applicants and objectors, and selected a trial committee, made up of attorneys for the interested parties,[3] to analyze the applications, divide the claims into classes, and select one claim representative of each class for consideration by the court. In compliance with the court's directions, the trial committee divided the claims into eight classes and chose a representative claim from each. The classes are summarized as follows:

| CLASS | APPLICANT | WATER DIVISION | NATURE OF CLAIMS |
|---|---|---|---|
| I | Bluepond Associates * | 1 through 7 | Underground storage rights for tributary water |
| II | Various Joint Ventures * | 1 & 2 | Well field projects involving nontributary ground water |
| III | Central Metropolitan Water Users * | 1 | Ground water infiltration projects involving both nontributary and tributary ground water |
| IV | Central Metropolitan Water Users * | 1 | Claims for unconsumed withdrawals, return flows and waste water from existing wells producing nontributary ground water ** |
| V | Central Metropolitan Water Users * | 1 | Claims for unconsumed withdrawals, return flows and waste water from existing wells producing nontributary ground water ** |

**3.** The trial committee consisted of an attorney for each of the four groups of claimants, one attorney from each water division, an assistant attorney general of the State of Colorado, and an assistant United States attorney.

| CLASS | APPLICANT | WATER DIVISION | NATURE OF CLAIMS |
|---|---|---|---|
| VI | Johnston | 2 | Wells on applicant's property for production of nontributary ground water |
| VII | Colorado Pacific | 7 | Wells on properties of others, to produce tributary water at shallower levels and nontributary water at deeper levels |
| VIII | Nedlog | 5 & 6 | Wells for production of nontributary ground water from Burns Basin plus certain "lost water" spilling annually from that basin |

\* Included among the Huston-Leaffer-Yaffe joint ventures.

\*\* It is unclear from the record how class IV and class V claims differ in nature.

After receiving a report from the trial committee indicating that several of the applications could require consideration of additional legal issues, the special water judge submitted a "Request for Clarification" to obtain permission from this court to determine certain supplemental or subordinate questions of law. We granted that request and authorized the court to answer such questions in its discretion. The trial court then considered oral and written argument by the parties and answered the original five questions posed by this court in *Southeastern Colorado Water Conservancy District v. Huston, supra.* The following is a summary of the trial court's written rulings on those questions:

Q1: Nontributary waters are subject to appropriation.

Q2: The authority for appropriation of nontributary water outside a designated ground water basin is section 37–90–137, C.R.S.1973 (1982 Supp.), which provides for issuance of well permits by the state engineer, with review of the state engineer's action to be under section 24–4–106, C.R.S.1973 (1982 Repl. Vol. 10), a part of the State Administrative Procedure Act, in the district court in the county where the well site is situated. This review procedure is prescribed in section 37–90–115, C.R.S. 1973 (1982 Supp.).[4] The right to appropriate such water is also based on *Colo. Const.* Art. XVI, §§ 5 and 6, and judicial recognition of appropriations may be obtained under the Water Right Determination and Administration Act of 1969, article 92 of title 37, C.R.S.1973.

Q3: The appropriation of nontributary ground water outside the boundaries of a designated ground water basin can be accomplished by persons having no property interest in the surface, but only with the consent of the landowner to construct the necessary physical works.

Q4: Nontributary ground water outside designated ground water basins can be appropriated for the use of persons other than the claimant so long as the claim is not speculative under the guidelines of our prior cases, notably *Colorado River Water Conservation District v. Vidler Tunnel Water Co.,* 197 Colo. 413, 594 P.2d 566 (1979); *Bunger v. Uncompahgre Valley Water Users Ass'n,* 192 Colo. 159, 557 P.2d 389 (1976); and *Taussig v. Moffat Tunnel*

4. Section 37–90–115 was repealed and reenacted, with amendments, after the special water judge issued judgment in this case, as discussed in part II.A.3. of this opinion.

*Water & Development Co.,* 106 Colo. 384, 106 P.2d 363 (1940).

Q5: An application for adjudication of a right in nontributary ground water outside a designated ground water basin should not be filed in the water court until a well permit has been issued by the state engineer, or has been denied and appellate processes have been completed, but an exception is appropriate if the priority date for a particular calendar year may be lost by so deferring the filing.

The special water judge then went on to consider each of the eight classes of claims, stating that the rulings on the representative applications may implicitly answer some of the supplemental questions of law but that such questions would not be specifically posed and answered.[5] In ruling upon the individual claims, the judge treated the representative applications as if challenged by motions to dismiss and considered all matters alleged in the applications as if true. With regard to some of the applications, the judge reviewed supplementary information and treated those claims as if challenged by motions for summary judgment. The judge dismissed all class I claims as speculative and infeasible; dismissed all class II claims as speculative and premature, but with leave to renew after well permit proceedings are completed and ownership or landowners' consent for use of well sites is obtained; dismissed all class III claims as reflecting on their faces that the nontributary water is developed water not subject to appropriation by the applicants; dismissed all class IV claims for various reasons as to waters developed by others but denied dismissal of the claims for unconsumed withdrawals, return flows and waste water developed by the applicants; dismissed the class V claims for numerous reasons including speculation; dismissed

the class VI claims for all uses except irrigation and stock watering purposes because speculative for other purposes, and limited the quantity allowable to that needed for irrigation and stock water; denied dismissal of the class VII claims but held that neither dust control nor land reclamation, included among the claimed uses for the water, is a beneficial use; and dismissed all class VIII claims as speculative, but with leave to file a new application for a "realistic quantity" of water.[6] The applicants have appealed from the dismissal of the class I, II, VI and VIII claims but have not sought review of the orders dismissing the class III, IV and V claims. Additionally, Colorado Pacific challenges the ruling that neither dust control nor land reclamation is a beneficial use with respect to its class VII claims. The special water judge also expressed the view that the United States of America has no reserved water rights associated with federal lands, and the United States asks that we disapprove that statement.

Because we conclude that nontributary ground water is not subject to appropriation under the Colorado Constitution or to adjudication under the Water Right Determination and Administration Act of 1969, article 92 of title 37, C.R.S.1973 (1982 Supp.) (the 1969 Act), we hold that all applications for adjudication of rights to nontributary ground water under the 1969 Act must be dismissed. To the extent that the applications involve claims for tributary waters, we conclude that they were properly filed in the water courts for the seven water divisions and should be returned to those divisions for further proceedings.

## II. REVIEW OF ANSWERS TO QUESTIONS POSED TO THE SPECIAL WATER JUDGE

We first review the trial court's answers to Q1 and Q2, the two questions that pro-

5. We do not set forth the supplemental questions here because the trial court did not directly make rulings on them. To the extent that these supplemental questions relate to the claims on appeal and are not included within the original five questions, we mention them at points in this opinion where they are relevant to our discussion.

6. The trial court's reasons for dismissal of the various claims are capsulized here, and our statement is not intended to describe completely the grounds relied on by the judge to support his rulings.

vide the key to disposition of most of the claims before the special water judge. We then consider the answers to Q3, Q4 and Q5 to the extent we deem it appropriate to provide guidance for further proceedings on the various claims. We next address the trial court's dismissal of certain claims for tributary water. Finally, we review the trial court's additional rulings that dust control and land reclamation are not beneficial uses with respect to the class VII claims of Colorado Pacific and that the United States has no reserved water rights based on reservations of federal lands.

## A. Answers to Q1 and Q2

In answering Q1 and Q2, the special water judge held that nontributary ground water is subject to appropriation, regardless of whether such water is located within a designated ground water basin established under the Colorado Ground Water Management Act, article 90 of title 37, C.R.S.1973 (1982 Supp.) (the 1965 Act). All the claims before the special water judge relate to areas outside designated basins. The court held that the right to appropriate nontributary ground water outside of such basins can be implemented by application for a well permit from the state engineer under section 37–90–137 of the 1965 Act and by adjudication of rights to such water under the procedures set forth in the 1969 Act. While the court explicitly based the right to appropriate nontributary ground water on statutory authority, the special water judge also expressed the opinion that the constitutional right to appropriate water under *Colo. Const.* Art. XVI, §§ 5 and 6 includes all waters, tributary and nontributary alike, despite the reference in those sections to waters of any "natural stream." Although

we agree that section 37–90–137 provides the authority for obtaining rights to nontributary ground water outside designated basins, we hold that the constitutional right of appropriation and the adjudication procedures of the 1969 Act do not extend to nontributary ground water. We take this occasion to review the history of water law development in Colorado and the present legislative scheme embodied in the 1965 and 1969 Acts to promote a full understanding of the reasons for our answers to Q1 and Q2.

### 1. Federal/State/Private Landowner Relationships

Colorado and the other western states derive their authority to develop a system of water law from the federal government, which once owned substantially all lands now within the boundaries of those states. In the latter half of the nineteenth century, the United States Congress enacted various public land laws for the purpose of encouraging settlement of the western frontier. These laws took many forms, but their common objective was to promote development of the agricultural and mineral resources of the west by granting public domain lands to those who should discover valuable minerals and to others who should settle the vast new country.[7] Encouraged by these inducements, miners and other pioneers occupied parts of the arid lands west of the hundredth meridian of longitude before the formulation of federal law or policy concerning rights in water. Many of the mines and farms were remote from natural streams, and "the settlers in this new land quickly realized that the riparian doctrine of water rights that had served well in the humid

**7.** Principal among the early federal statutes for disposition of public lands were the homestead and preemption laws, *e.g.,* Act of May 20, 1862, ch. 75, 12 Stat. 392 (codified as amended at 43 U.S.C. §§ 161 to 263 (1976)) (repealed by the Federal Land Policy and Management Act of 1976, Pub.L. No. 94–579, 90 Stat. 2743–2794 (codified as amended at 43 U.S.C. §§ 1701 to 1782 (1976 & Supp. II 1978))); the mining laws, starting with the Act of July 26, 1866, ch. 262, 14 Stat. 251 (codified as amended at 30 U.S.C. §§ 21 to 54 (1976)); the Desert Land Act of March 3, 1877, ch. 107, 19 Stat. 377 (codified as amended at 43 U.S.C. §§ 321 to 329 (1976)); and various statutes providing for large land grants to aid in the building of railroads, *e.g.,* the Union Pacific Act of July 1, 1862, ch. 120, 12 Stat. 489 (since repealed). For a history of the federal land grants to aid in the building of a transcontinental railroad concurrent with the development of land west of the hundredth meridian by settlers and miners, *see generally Leo Sheep Co. v. United States,* 440 U.S. 668, 670–677, 99 S.Ct. 1403, 1405–1409, 59 L.Ed.2d 677 (1979).

regions of the East would not work in the arid lands of the West." [8] *California v. United States,* 438 U.S. 645, 653, 98 S.Ct. 2985, 2990, 57 L.Ed.2d 1018 (1978); *see generally California Oregon Power Co. v. Beaver Portland Cement Co.,* 295 U.S. 142, 55 S.Ct. 725, 79 L.Ed. 1356 (1935) (cited herein as *California Oregon Power Co.*); *United States v. City and County of Denver,* 656 P.2d 1 (Colo.1982); *Coffin v. Left Hand Ditch Co.,* 6 Colo. 443 (1882). Spurred by the need to obtain water for domestic, irrigation and mining uses, the settlers did not await federal leadership, but instead developed their own laws, customs and judicial decisions recognizing priority of appropriation, linked to beneficial use of the water, as the basis for obtaining rights to this vital resource. *See California v. United States, supra; California Oregon Power Co.; Jennison v. Kirk,* 98 U.S. 453, 25 L.Ed. 240 (1879); *United States v. City and County of Denver, supra; Coffin v. Left Hand Ditch Co., supra.*

Prior to the enactment of the first mining laws in 1866, the federal government by silent acquiescence approved the rule—evidenced by local legislation, judicial decisions, and customary law and usage—"that the acquisition of water by prior appropriation for a beneficial use was entitled to protection. . . ." *California Oregon Power Co.,* 295 U.S. at 154, 55 S.Ct. at 727; *see Broder v. Natoma Water and Mining Co.,* 101 U.S. 274, 25 L.Ed. 790 (1879); *Basey v.*

*Gallagher,* 87 U.S. 670, 20 Wall. 670, 22 L.Ed. 452 (1875); *Atchison v. Peterson,* 87 U.S. 507, 20 Wall. 507, 22 L.Ed. 414 (1874); *United States v. City and County of Denver, supra.* Then, in a series of acts providing for disposition of parts of the public domain, Congress accorded formal recognition to water rights acquired through local laws and customs and "rejected the alternative of a general federal water law." *United States v. City and County of Denver, supra,* 656 P.2d at 7; *see* Act of July 26, 1866, ch. 262, § 9, 14 Stat. 251, 253 (codified at 30 U.S.C. § 51 (1976)); [9] Act of July 9, 1870, ch. 235, § 17, 16 Stat. 217, 218 (codified at 30 U.S.C. § 52 (1976)); [10] Desert Land Act of March 3, 1877, ch. 107, 19 Stat. 377 (codified as amended at 43 U.S.C. §§ 321 to 329 (1976)); *Jennison v. Kirk, supra.*

The 1866 and 1870 Acts were not limited to confirmation of appropriative water rights acquired prior to 1866, but "[t]hey reach into the future as well, and approve and confirm the policy of appropriation for a beneficial use, as recognized by local rules and customs, and the legislation and judicial decisions of the arid-land states, as the test and measure of private rights in and to the non-navigable waters on the public domain." *California Oregon Power Co.,* 295 U.S. at 155, 55 S.Ct. at 728. The Desert Land Act of 1877 made the application of the policy to future appropriations even

---

**8.** For a discussion of the common law riparian rights doctrine *see United States v. Rio Grande Dam & Irrigation Co.,* 174 U.S. 690, 19 S.Ct. 770, 43 L.Ed. 1136 (1899); *Atchison v. Peterson,* 87 U.S. 507, 20 Wall. 507, 22 L.Ed. 414 (1874); *Coffin v. Left Hand Ditch Co.,* 6 Colo. 443, 447 (1882); Note, *A Survey of Colorado Water Law,* 47 Denver L.J. 226, 231 (1970).

**9.** Section 9 of the Act of 1866 provides in part: whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; . . . ch. 262, § 9, 14 Stat. 253 (now codified at 30 U.S.C. § 51 (1976)). The Act of 1866 was not a grant of water rights under federal law. Rath-

er, it was a voluntary recognition by Congress of a pre-existing right based on customary law and constituting a valid claim to its continued use. *California v. United States, supra,* 438 U.S. at 656, 98 S.Ct. at 2991; *California Oregon Power Co.,* 295 U.S. at 155, 55 S.Ct. at 728; *see United States v. Rio Grande Dam & Irrigation Co.,* 174 U.S. 690, 704–706, 19 S.Ct. 770, 775–776, 43 L.Ed. 1136 (1899); *Jennison v. Kirk, supra; Basey v. Gallagher, supra; Coffin v. Left Hand Ditch Co., supra.*

**10.** The Act of July 9, 1870, provided that "all patents granted, or preemption or homesteads allowed, shall be subject to any vested and accrued water rights . . . as may have been acquired under or recognized by [section 9 of the Act of 1866]." Act of July 9, 1870, ch. 235, § 17, 16 Stat. 217, 218 (codified as amended at 30 U.S.C. § 52 (1976)).

more explicit. *California Oregon Power Co.,* 295 U.S. at 155–156, 55 S.Ct. at 728. In construing the Desert Land Act of 1877 long after it had been implemented by the patenting of large areas of federal lands, the United States Supreme Court noted that "[a]s the owner of the public domain, the government possessed the power to dispose of land and water thereon together, or to dispose of them separately" and held that "[t]he fair construction of the provision [of the Desert Land Act of 1877] now under review [11] is that Congress intended to establish the rule that for the future the land should be patented separately; and that all non-navigable waters thereon should be reserved for the use of the public under the laws of the states and territories named." [12] *California Oregon Power Co.,* 295 U.S. at 162, 55 S.Ct. at 731. *Accord, Ickes v. Fox,* 300 U.S. 82, 57 S.Ct. 412, 81 L.Ed. 525 (1937). This rule extends to lands patented under the homestead and preemption laws as well as those disposed of under the Des-

ert Land Act of 1877. *California Oregon Power Co.* Recently, the United States Supreme Court, in rejecting a claim that ground water is a "valuable mineral" locatable under the mining laws, again expressly recognized that the United States Congress established a "passive" water rights policy in the mining laws of 1866, 1870, and 1872 [13] and by that legislation three times affirmed "the view that private water rights on federal lands were to be governed by state and local law and custom." *Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, 614, 98 S.Ct. 2002, 2008, 56 L.Ed.2d 570 (1978). Moreover, in *California v. United States, supra,* the United States Supreme Court noted that through the history of the relationship between the federal government and the states in the reclamation of the arid lands of the western states "runs the consistent thread of purposeful and continued deference to state water law by Congress." 438 U.S. at 653, 98 S.Ct. at 2990.[14]

**11.** The section of the Desert Land Act of 1877 under review in *California Oregon Power Co.* provides for the homesteading of arid public lands

> by [the homesteader's] conducting water upon the same, within the period of three years [after filing a declaration of intent to do so], *Provided however* that the right to the use of water by the person so conducting the same ... shall not exceed the amount of water actually appropriated, and necessarily used for the purpose of irrigation and reclamation: and all surplus water over and above such actual appropriation and use, together with the water of all lakes, rivers and other sources of water supply upon the public lands and not navigable, shall remain and be held free for the appropriation and use of the public for irrigation, mining and manufacturing purposes subject to existing rights.

Act of March 3, 1877, ch. 107, 19 Stat. 377 (codified as amended at 43 U.S.C. § 321 (1976)).

**12.** Colorado was included in the group of states to which the Desert Land Act of 1877 was made applicable pursuant to the Act of March 3, 1891, ch. 561, § 8, 26 Stat. 1097.

**13.** Act of May 10, 1872, ch. 152, 17 Stat. 91 (codified as amended at 30 U.S.C. §§ 21 to 54 (1976)).

**14.** The federal reserved rights doctrine and the prohibition against interference with the navigability of any navigable waters have been rec-

ognized as limitations on the right of the states to develop their own water law. *See California Oregon Power Co., supra,* 295 U.S. at 159, 55 S.Ct. at 729; *California v. United States, supra,* 438 U.S. at 662, 98 S.Ct. at 2994; *United States v. Rio Grande Dam & Irrigation Co., supra.* In addition, the United States Supreme Court recently held that federal deference to state water law does not indicate that Congress wished to remove the federal constitutional constraint against the states' placing unreasonable burdens on interstate commerce. *Sporhase v. Nebraska ex rel. Douglas,* —— U.S. ——, 102 S.Ct. 3456, 73 L.Ed.2d 1254 (1982); *U.S. Const.* art. I, § 8, cl. 3.

The doctrine of reserved water rights of the United States incident to reservation of federally owned lands for various purposes has a history of its own. We recently explored that history and some of the complexities of the doctrine in *United States v. City and County of Denver, supra.* Leading federal reserved rights cases include *United States v. New Mexico,* 438 U.S. 696, 98 S.Ct. 3012, 57 L.Ed.2d 1052 (1978); *Cappaert v. United States,* 426 U.S. 128, 96 S.Ct. 2062, 48 L.Ed.2d 523 (1976); *Arizona v. California,* 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963); and *Winters v. United States,* 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908). In *United States v. New Mexico, supra,* 438 U.S. at 698, 98 S.Ct. at 3013, the United States Supreme Court stated:

> whatever powers the States acquired over their waters as a result of congressional Acts and admission into the Union, however, Con-

Additional congressional recognition of state law as the source of rights to obtain and use water is to be found in the legislative history of the adoption of the McCarran Amendment. In 1952 Congress enacted that amendment, codified at 43 U.S.C. § 666 (1976), providing for the joinder of the United States in judicial proceedings for adjudication or administration of water rights under state law. The Senate Report on the McCarran Amendment recognizes that "[i]n the arid Western States, for more than 80 years, the law has been that the water above and beneath the surface of the ground belongs to the public, and the right to the use thereof is to be acquired from the State in which it is found, which State is vested with the primary control thereof." S.Rep. No. 755, 82d Cong., 1st Sess. 3, 6 (1951).

The United States Supreme Court, in *California Oregon Power Co.,* made clear that each state affected by that decision is free to adopt such system for acquisition of water rights as it considers best:

> Nothing we have said is meant to suggest that the [Desert Land Act of 1877], as we construe it, has the effect of curtailing the power of the states affected to legislate in respect of waters and water rights as they deem wise in the public interest. What we hold is that following the act of 1877, if not before, all non-navigable waters then a part of the public domain became *publici juris,* subject to the plenary control of the designated states, including those since created out of the territories named, with the right in each to determine for itself to what extent the rule of appropriation or the common-law rule in respect of riparian rights should obtain. For since "Congress cannot enforce either rule upon any state," *Kansas v. Colorado,* 206 U.S. 46, 94 [27 S.Ct. 655, 666, 51 L.Ed. 956], the full power of

choice must remain with the state. The Desert Land Act does not bind or purport to bind the states to any policy. It simply recognizes and gives sanction, in so far as the United States and its future grantees are concerned, to the state and local doctrine of appropriation, and seeks to remove what otherwise might be an impediment to its full and successful operation. *See Wyoming v. Colorado,* 259 U.S. 419, 465 [42 S.Ct. 552, 557, 66 L.Ed. 999].

295 U.S. at 163–164, 55 S.Ct. at 731–732. Recently, in *California v. United States, supra,* the United States Supreme Court reaffirmed that holding, quoting the above passage in full, except for the first sentence. 438 U.S. at 658, 98 S.Ct. at 2992.[15]

The Congress of the United States authorized the admission of Colorado as a state of the Union in 1876. Enabling Act of Colorado, C.R.S.1973 (1980 Repl.Vol. 1A). The Enabling Act provided for admission of this new state upon "an equal footing with the original states," §§ 1, 5; required disclaimer of "all right and title to unappropriated public lands" in Colorado, § 4, *see Hartman v. Tresise,* 36 Colo. 146, 84 P. 685 (1906); but made no mention of waters.

As the foregoing discussion reflects, federal statutes, as interpreted by the United States Supreme Court, recognize Colorado's authority to adopt its own system for the use of all waters within the state in accordance with the needs of its citizens, subject to the prohibitions against interference with federal reserved rights, with interstate commerce, and with the navigability of any navigable waters. We now examine how that law has developed.

### 2. Development of the Law of Tributary Water

■ Colorado's water law had its beginnings prior to statehood and, naturally, the law with respect to the use of visible sur-

---

gress did not intend thereby to relinquish its authority to reserve unappropriated water in the future for use on appurtenant lands withdrawn from the public domain for specific federal purposes.

**15.** For additional development of the historical background of the relationship between the

federal government and the western states in the development of water law, *see California v. United States, supra,* 438 U.S. at 653–663, 98 S.Ct. at 2990–2995, and *United States v. City and County of Denver, supra,* 656 P.2d at 7–8.

face waters was the subject of the most extensive early development. The doctrine of priority of appropriation as the source of rights to water in the streams of Colorado was established before our state constitution was adopted, starting "from the date of the earliest appropriations of water within the boundaries of the state." *Coffin v. Left Hand Ditch Co., supra,* 6 Colo. at 446. With the adoption of the Colorado Constitution in 1876, the doctrine was formalized in *Colo. Const.* Art. XVI, §§ 5 and 6, which have continued unamended to this day:

> The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided.

> The right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purpose; but when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall have the preference over those claiming for any other purpose, and those using the water for agricultural purposes shall have preference over those using the same for manufacturing purposes.

Under these constitutional provisions, the right of prior appropriation applies only to "waters of any natural stream." Consistent with the principle of construction that where the language is plain, the meaning

clear, and no absurdity is involved, the words of the constitution are to be given their natural meaning, *e.g., People ex rel. Park Reservoir Co. v. Hinderlider,* 98 Colo. 505, 57 P.2d 894 (1936); *People ex rel. Seeley v. May,* 9 Colo. 80, 10 P. 641 (1885), we have held that the quoted language encompasses only waters in natural streams and all waters tributary thereto. *Kuiper v. Lundvall,* 187 Colo. 40, 529 P.2d 1328 (1974), *appeal dismissed,* 421 U.S. 996, 95 S.Ct. 2391, 44 L.Ed.2d 663 (1975); *Whitten v. Coit,* 153 Colo. 157, 385 P.2d 131 (1963); *see Pikes Peak Golf Club, Inc. v. Kuiper,* 169 Colo. 309, 455 P.2d 882 (1969); *Safranek v. Town of Limon,* 123 Colo. 330, 228 P.2d 975 (1951); *Nevius v. Smith,* 86 Colo. 178, 279 P. 44 (1929).[16]

The general assembly early established a statutory framework for judicial recognition of rights acquired by exercise of the constitutional right to divert the unappropriated waters of natural streams to beneficial uses. Beginning as early as 1879[17] and continuing to the comprehensive treatment found in the 1969 Act, a system has been continuously in place for adjudication of rights to tributary waters under a system of priorities. *See State ex rel. Danielson v. Vickroy,* 627 P.2d 752, 757 (Colo.1981); *Union Colony of Colorado v. Elliott,* 5 Colo. 371, 378–380 (1880). As the science of hydrology developed, the law increasingly took cognizance of the fact that many underground waters are tributary to streams and that withdrawal of water from wells can affect streamflow. *See, e.g., Fellhauer v. People,* 167 Colo. 320, 447 P.2d 986 (1968).[18] One important purpose of the

---

**16.** The general assembly construed the constitutional right to appropriate in a manner consistent with the cited cases in reenacting section 37–82–101(1) in 1979 to read as follows:

> The water of every natural stream, as referred to in sections 5 and 6 of article XVI of the state constitution, includes all water occurring within the state of Colorado which is in or tributary to a natural surface stream. The waters of natural streams of Colorado do not include underground waters not in or tributary to natural surface streams nor underground waters which, when withdrawn,

do not impair the flow of natural surface streams.

Colo.Sess.Laws 1979, ch. 346, 37–82–101(1) at 1366.

**17.** *See* Colo.Sess.Laws 1879, Act of February 19, 1879, pp. 94–108.

**18.** Compare *Fellhauer v. People, supra,* with *Medano Ditch Co. v. Adams,* 29 Colo. 317, 68 P. 431 (1902) and *McClellan v. Hurdle,* 3 Colo. App. 430, 33 P. 280 (1893), holding that underground waters supplying a natural stream and underground currents that flow in well-defined

1969 Act was to "integrate the appropriation, use, and administration of underground water tributary to a stream with the use of surface water in such a way as to maximize the beneficial use of all of the waters of this state." Section 37–92–102(1), C.R.S.1973 (1982 Supp.). As we have recently indicated, however, the 1969 Act is applicable only to water in or tributary to streams and does not apply to nontributary ground water.[19] *State ex rel. Danielson v. Vickroy, supra; see Danielson v. Kerbs Ag., Inc.,* 646 P.2d 363 (Colo.1982). The basis for this conclusion becomes clear upon careful examination of the 1969 Act.

The proceedings prescribed by section 37–92–302 of the 1969 Act for adjudication of water rights are special proceedings, and their scope is governed by statute. *Gardner v. State,* 200 Colo. 221, 614 P.2d 357 (1980); *see* C.R.C.P. 81(a); *cf. Colorado River Water Conservation District v. Rocky Mountain Power Co.,* 174 Colo. 309, 486 P.2d 438 (1971), *cert. denied,* 405 U.S. 996, 92 S.Ct. 1245, 31 L.Ed.2d 465 (1972) (water adjudications under predecessor adjudication statute were special statutory proceedings); *Orchard City Irrigation District v. Whitten,* 146 Colo. 127, 361 P.2d 130 (1961) (to same effect as *Colorado River Water Conservation District v. Rocky Mountain Power Co.*). To determine what claims are subject to the administrative system and adjudication procedures of the 1969 Act, the statutory provisions for the jurisdiction of

the water court and the scope of an adjudication must be read together with the definitions of critical terms employed in those statutes.

Jurisdiction over adjudication of water rights is established in the water court of each water division under section 37–92–203(1), C.R.S.1973:

There is established in each water division the position of water judge of the district courts of all counties situated entirely or partly within the division. Said district courts collectively acting through the water judge have exclusive jurisdiction of water matters within the division, and no judge other than the one designated as a water judge shall act with respect to water matters in that division. Water matters shall include only those matters which this article and any other law shall specify to be heard by the water judge of the district courts.

The last sentence of this section clearly refers us to other sections of the 1969 Act for definition of those "water matters" properly subject to the jurisdiction of the water court.[20]

Section 37–92–302(1)(a), C.R.S.1973 (1982 Supp.) prescribes the types of claims that may be filed in the water court:

Any person who desires a determination of a water right or a conditional water right and the amount and priority thereof, including a determination that a conditional water right has become a water

channels are governed by the same rules of appropriation as surface streams. These two latter cases indicate an early awareness of tributary underground waters but show an imperfect understanding of the interrelation of surface streams and underground waters.

19. The 1969 Act does not apply to tributary water that is within the definition of designated ground water. *State ex rel. Danielson v. Vickroy, supra. See* section 37–90–103(6), C.R.S. 1973, as amended by Colo.Sess.Laws 1983, ch. ——, 37–90–103(6) at —— (House Bill No. 1399, approved May 23, 1983) for the definition of designated ground water.

20. We have held that some matters not explicitly designated to be heard by a water judge are included in water court jurisdiction by necessary implication or can be considered ancillary

to the exercise of the water court's jurisdiction. Thus, an action to determine the validity of rules and regulations promulgated by the state engineer under the 1969 Act is within the exclusive jurisdiction of the water judge even though not specified in that act as a water matter. *Kuiper v. Well Owners Conservation Ass'n,* 176 Colo. 119, 490 P.2d 268 (1971). Moreover, we have ruled that the 1969 Act implicitly allows water court jurisdiction over a claim to enforce a deed covenant that would affect the outcome of an application for a plan for augmentation pending in that court. *Oliver v. District Court,* 190 Colo. 524, 549 P.2d 770 (1976); *see Perdue v. Ft. Lyon Canal Co.,* 184 Colo. 219, 519 P.2d 954 (1974). Recently, we stated that the water court has authority to make determinations and enter decrees of abandonment of water rights. *Gardner v. State, supra.*

right by reason of the completion of the appropriation, a determination with respect to a change of a water right, approval of a plan for augmentation, quadrennial finding of reasonable diligence, or approval of a proposed or existing exchange of water under section 37–80–120 or 37–83–104, shall file with the water clerk in quadruplicate a verified application setting forth facts supporting the ruling sought, . . . .

As relevant here, it is a "water right" or a "conditional water right" that is to be determined. These terms have precise definitions, set forth in section 37–92–103(12) and (6), C.R.S.1973, respectively, as follows:

"Water right" means a right to use in accordance with its priority a certain portion of the *waters of the state* by reason of the appropriation of the same. (Emphasis added.)

"Conditional water right" means a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based.

Thus, water rights and conditional water rights relate to "waters of the state," a term defined in section 37–92–103(13) in these words:

"Waters of the state" means all surface and underground water in or tributary to all natural streams within the state of Colorado, except [designated ground water, defined in section 37–90–103(6) ].[21]

Reading these statutory provisions together leads inescapably to the conclusion that the water right determination proceedings authorized by section 37–92–302(1)(a) do not extend to rights in nontributary ground water.[22] *See also* section 37–82–101(1), C.R.S.1973 (1982 Supp.). This result is implicit

in the analysis on which we based our holding in *State ex rel. Danielson v. Vickroy, supra,* that a water judge has no jurisdiction over matters involving designated ground water. *Accord, Pioneer Irrigation Districts v. Danielson,* 658 P.2d 842 (Colo. 1983); *see Ground Water Commission v. Shanks,* 658 P.2d 847 (Colo.1983); *see also Broyles v. Ft. Lyon Canal Co.,* 638 P.2d 244 (Colo.1981).[23]

The conclusion that the 1969 Act adjudication procedures do not apply to nontributary ground water is also consistent with our holding in *Whitten v. Coit, supra,* that rights to nontributary ground water could not be adjudicated under the Water Adjudication Act of 1943, 148–9–1 to –27, C.R.S. 1963, which was the predecessor of the 1969 Act. Our conclusion in *Whitten v. Coit, supra,* after reviewing the 1943 act, that "[t]he entire plan of the water adjudication act is based on the concept of 'rivers and natural streams,' " 153 Colo. at 164, 385 P.2d at 135, applies with equal force to the 1969 Act.

Contrary to the plain meaning of the statutory provisions defining the scope of the water court's jurisdiction, some parties to the present action argue that the water court has jurisdiction to adjudicate rights to nontributary ground water outside of designated basins, relying primarily on *Perdue v. Ft. Lyon Canal Co.,* 184 Colo. 219, 519 P.2d 954 (1974). In that case we upheld the judgment of a water judge granting a conditional decree for nontributary surface water in a lake and determining that, by reason of a private agreement between the parties, the decree was superior to an earlier decree awarded to other claimants. We rejected an argument that the water court

---

21. The joint ventures and Colorado Pacific argue that the exception of designated ground water from the definition of "waters of the state" implies that nontributary ground water that is not designated ground water is included within that definition. This seriously misreads the statute. "Waters of the state" is expressly limited to tributary water, and the exception of "designated ground water" is appropriate only because some tributary water is included in that definition but is not to be considered part of "waters of the state." *See* section 37–90–

103(6), C.R.S.1973, as amended by Colo.Sess. Laws 1983, ch. ——, 37–90–103(6) at —— (House Bill No. 1399, approved May 23, 1983).

22. *See* note 24 *infra* and accompanying text.

23. We have held that *State ex rel. Danielson v. Vickroy, supra,* is to be applied prospectively only. *Ground Water Commission v. Shanks, supra.*

lacked jurisdiction and held, without elaboration, that nontributary water not within the definition of designated ground water is included within the term "water matters" under the 1969 Act. Since *Perdue v. Ft. Lyon Canal Co.* involved nontributary surface water only, we decline to interpret its holding as extending to nontributary ground water. Whether we would follow *Perdue* in the future in applying the adjudication procedures of the 1969 Act to nontributary surface water is an issue that we need not address today.[24]

In making the rule absolute in the present case, we cited *Perdue v. Ft. Lyon Canal Co.* for the proposition that the special water judge has jurisdiction to rule on the five questions of law we directed the judge to answer. *Southeastern Colorado Water Conservancy District v. Huston,* 197 Colo. at 370, 593 P.2d at 1350. In so holding, we did not intend to prejudge whether claims for nontributary ground water outside designated basins could be adjudicated under the 1969 Act, but only recognized that the special water judge, whether in his capacity as a water judge or as a district judge, has authority to determine basic questions of appropriability and the law applicable to appropriability in this unique proceeding.

On other occasions we have reviewed water court decrees adjudicating rights in nontributary ground water outside designated ground water basins. In *Preisser v. Smith Cattle, Inc.,* 190 Colo. 243, 545 P.2d 711 (1976), we upheld a water court decree adjudicating rights to nontributary ground water, apparently not within a designated basin, where the water court's jurisdiction to issue that decree was not questioned. In *Stonewall Estates v. CF & I Steel Corp.,* 197 Colo. 255, 592 P.2d 1318 (1979), we held void a water court decree for nontributary ground water because the published resume of the application upon which the decree was based failed to reflect that the application related to nontributary water. In *Stonewall Estates* we specifically noted that no appeal had been taken from the ruling that the water judge had jurisdiction over nontributary waters. *See also District 10 Water Users Ass'n v. Barnett,* 198 Colo. 291, 599 P.2d 894 (1979); *Wadsworth v. Kuiper,* 193 Colo. 95, 562 P.2d 1114 (1977). We hold today, however, that claims for nontributary ground water outside designated ground water basins cannot be adjudicated under the 1969 Act. To the extent that our earlier cases may be interpreted as ruling to the contrary, we shall not follow them.[25]

### 3. Development of the Law of Nontributary Ground Water

■ The law governing nontributary ground water has developed more slowly than that with respect to tributary water. *See generally* Note, *A Survey of Colorado Water Law,* 47 Den.L.J. 226, 307–339 (1970); *see also* Hannay, *Recent Developments in Colorado Groundwater Law,* 58 Den.L.J. 801 (1981). Prior to the 1965 Act the Colorado legislature acted only sparingly concerning withdrawals of ground water and did not distinguish between tributary and nontributary waters in legislation on

**24.** The state argues in its brief that section 37–82–102, C.R.S.1973, relating to the prior right of a landowner to nontributary seepage or spring waters arising on his land, makes sufficient though indefinite reference to other governing laws relating to priorities to cause adjudications with respect to priorities in such waters to be included in "water matters" under section 37–92–203(1) of the 1969 Act. Whether the jurisdictional holding in *Perdue* can be supported on that ground we leave for another day.

We note that a considerable body of law developed prior to the 1969 Act in the area of nontributary seepage or spring waters and a landowner's preferred right to such water if capable of being used upon his lands. *See, e.g., Cline v. Whitten,* 144 Colo. 126, 355 P.2d 306 (1960); section 37–82–102, C.R.S.1973.

**25.** After our original opinion in this case was issued, the General Assembly passed and the Governor signed Senate Bill No. 439 (1983), which amended section 37–92–203(1), expanding the definition of "water matters" which are to be heard by the water courts to include determinations of rights to nontributary ground water outside of designated ground water basins. This legislation is set out in full in our opinion on petitions for rehearing, appended hereto. We express no view on the applicability, validity or effect of this legislation.

this subject. Thus, in 1887 a general purpose statute [26] was enacted to address prevention of waste from artesian wells and preservation of soil strata information from well bores. Colo.Sess.Laws 1887, Act of April 4, 1887, pp. 52–53. The general assembly repealed that statute in 1953 and replaced it with an act concerning artesian wells and underground water, adopted "to protect and conserve the underground water resources of the state by regulating the construction of wells so as to assure that they are made, maintained, operated and used in a manner which will prevent waste and pollution and which will permit the maximum beneficial use of underground water." Colo.Sess.Laws 1953, ch. 246, § 1, p. 647. The 1953 legislation required licensing of well drillers. Colo.Sess. Laws 1953, ch. 246, § 4, p. 648. In 1957, the

general assembly passed the Colorado Ground Water Law, repealing the 1953 Act and addressing for the first time the subject of limitation of drilling to protect ground water supplies in critical areas. Colo.Sess.Laws 1957, ch. 289, pp. 863–873. It contained no provisions authorizing adjudication or administration of rights in nontributary ground water, *Whitten v. Coit, supra,* but introduced the requirement that a permit be obtained from the state engineer as a condition to drilling a new well or increasing the supply from an existing well, Colo.Sess.Laws 1957, ch. 289, § 5, p. 869. The 1965 Act in turn repealed the 1957 legislation and established a detailed regulatory scheme for removal of nontributary water within designated ground water basins.[27] *See generally State ex rel. Daniel-*

**26.** Near the turn of the century the general assembly adopted a number of statutes authorizing and funding the drilling of particular wells for various purposes including irrigation and exploration for minerals. *See, e.g.,* Colo. Sess.Laws 1895, chs. 4–6, pp. 29–35. *See also* Colo.Sess.Laws 1935, ch. 80, pp. 242–243, a statute limiting the uses of water from low volume artesian wells to domestic and manufacturing, but excepting a number of acquifers and much of the state from application of the statute. That statute was repealed in 1953. Colo.Sess.Laws 1953, ch. 246, § 17, p. 653.

**27.** We are aware that wells were drilled for withdrawal of nontributary ground water prior to the 1965 Act, *see, e.g.,* Colorado Department of Natural Resources, *Ground Water Resources of the Bedrock Aquifers of the Denver Basin* 80–99 (1976), and that water courts have issued decrees for nontributary water, *see, e.g., Whitten v. Coit, supra.* The record does not reflect the numbers of these wells and decrees relating to areas outside designated ground water basins, but based on representations in the parties' briefs it appears safe to say they are substantial. The questions of the nature of the rights resulting from such development, the protections to be accorded to the persons who have obtained water from such wells, relying on judicial decree, local custom or administrative acquiescence, and the effect of section 37–90–137 upon those rights, are not before us. Undoubtedly the common law and the statutes in effect from time to time will provide a reservoir of principles adequate to resolve these issues as they may arise. *See, e.g.,* section 37–82–101, C.R.S.1973, adopted in 1969 and later repealed and reenacted in 1979; section 37–90–137(5), adopted in 1983 and set forth in

note 42, *infra.* For an early discussion of some of the considerations involved, *see* McHendrie, *The Law of Underground Water,* 13 Rocky Mtn.L.Rev. 1 (1940). The legislature has prescribed no special procedure, other than the well permit process in section 37–90–137, for determination of rights to nontributary ground water outside designated ground water basins.

We note that one facet of the nontributary ground water problem—the doctrine of "developed water"—has received extensive treatment in our cases. That doctrine is explained in *Sweetwater Development Corp. v. Schubert Ranches, Inc.,* 188 Colo. 379, 535 P.2d 215 (1975), as follows:

It has long been the law that the person who produces "developed" water which otherwise would not reach the surface or be tributary to any stream, may appropriate that water if the developer places it to a beneficial use prior to the time any other appropriator uses it. *Platte Valley Irrigation Co. v. Buckers Co.,* 25 Colo. 77, 53 P. 334 (1898). *See also Denver v. Fulton Irrigation Ditch Co.,* 179 Colo. 47, 506 P.2d 144 (1972); *Dalpez v. Nix,* 96 Colo. 540, 45 P.2d 176 (1935); and *Ripley v. Park Center L. & W. Co.,* 40 Colo. 129, 90 P. 75 (1907). Thus, prior to the 1965 Act, a person could obtain a prior right to "developed" water.

188 Colo. at 383, 535 P.2d at 218. *See Cresson Consolidated Gold Mining & Milling Co. v. Whitten,* 139 Colo. 273, 338 P.2d 278 (1959); *Leadville Mine Development Co. v. Anderson,* 91 Colo. 536, 17 P.2d 303 (1932); *Comrie v. Sweet,* 75 Colo. 199, 225 P. 214 (1924); *cf. Pikes Peak Golf Club, Inc. v. Kuiper,* 169 Colo. 309, 455 P.2d 882 (1969) (golf course owner had prior right to "salvaged" water collected at

*son v. Vickroy, supra,* and the cases collected in n. 7 of that opinion, 627 P.2d at 757.

As previously noted, the 1969 Act was adopted to integrate the appropriation, use and administration of tributary ground water and waters in surface streams. Section 37–92–102(1).[28] The 1965 and 1969 Acts deal with separate and mutually exclusive waters, *Broyles v. Ft. Lyon Canal Co., supra,* and, taken together, create a comprehensive system for the utilization of all water in or tributary to natural streams and all nontributary ground water.[29]

The 1965 Act provides for the creation of designated ground water basins and acquisition of rights to nontributary ground water therein under a modified form of prior appropriation to permit full economic development of designated ground water. Section 37–90–102, C.R.S.1973; *State ex rel. Danielson v. Vickroy, supra.* The legislature adopted a modified rather than a pure form of prior appropriation in recognition of the hydrologic differences between tributary and nontributary water. *See* Colorado Legislative Council, *Water Problems in Colorado,* Research Publ. No. 93 (November 1964). Tributary waters are not subject to eventual depletion because they are annually replenished, and the vested rights of senior appropriators can be fully protected by seasonal regulation of diversion by junior appropriators. Nontributary ground water supplies, however, may dwindle because water can be withdrawn from the aquifers in excess of the recharge rate, causing a "mining condition." *See Thompson v. Colorado Ground Water Commission,* 194 Colo.

489, 575 P.2d 372 (1978); *Fundingsland v. Colorado Ground Water Commission,* 171 Colo. 487, 468 P.2d 835 (1970). Curtailing diversions by junior appropriators in inverse order of priority does not provide a satisfactory method of protecting senior appropriators of nontributary ground water, for cessation of diversions from one well does not immediately make available an equivalent amount of water at another. Rather, the effect of one well on another is dependent upon such factors as the distance between the wells, the rate of withdrawal, and the transmissivity of the aquifer. *See Whitten v. Coit, supra; Water Problems in Colorado, supra.* Under the system established by the 1965 Act, rights to designated ground water may be acquired only if unappropriated water is available and the proposed appropriation will not unreasonably impair existing water rights or create unreasonable waste. Section 37–90–107(4), C.R.S.1973 (1982 Supp.); *Fundingsland v. Colorado Ground Water Commission, supra* ("availability" of unappropriated water is related to unreasonable impairment of existing rights in an aquifer where water withdrawals are causing a mining condition).

In contrast to the detailed legislative treatment accorded to designated ground water, the only provisions by the general assembly with respect to withdrawal of nontributary ground water outside designated basins are the limited ones found in section 37–90–137 of the 1965 Act.[30] Except for subsection (4), the provisions of section 37–90–137 apply to wells tapping

---

its own expense); section 34–50–106, C.R.S. 1973. No claims for developed water are before us on appeal.

The subject of judicial recognition of rights to nontributary water outside designated basins and the principles to be applied in establishing the rights of users and adjustment of conflicts among users might benefit from further legislative attention.

**28.** For a general discussion of the complexities of integrated administration of surface streams and tributary ground water, *see* Carlson, *Has the Doctrine of Appropriation Outlived its Usefulness?,* 19 Rocky Mtn.Min.L.Inst. 529 (1974); Comment, *Appropriation and Colorado's Ground Water: A Continuing Dilemma?,* 40 U.

of Colo.L.Rev. 133 (1967). This same subject is discussed, and the legislative history of the 1969 Act is outlined, in Hillhouse, *Integrating Ground and Surface Water Use in an Appropriation State,* 20 Rocky Mtn.Min.L.Inst. 691 (1975).

**29.** We express no opinion as to the applicability of either the 1965 Act or the 1969 Act to nontributary surface water.

**30.** The subject of withdrawal of nontributary water by wells has been characterized as the "neglected stepchild" of our water law. Carlson, *Has the Doctrine of Appropriation Outlived its Usefulness?,* 19 Rocky Mtn.Min.L.Inst. 529, 552 (1974).

tributary sources as well as those withdrawing nontributary water. We have held that section 37–90–137 of the 1965 Act provides legislative authority for drilling wells outside the boundaries of designated ground water basins. *Broyles v. Ft. Lyon Canal Co., supra.* Subsection (4) of that section, enacted in 1973 as Senate Bill 213,[31] establishes specific criteria to be applied by the state engineer in determining whether to issue a permit for a well tapping an aquifer containing nontributary water.[32]

The special water judge ruled that any affected party dissatisfied with the action of the state engineer on an application for a well permit under section 37–90–137 may obtain review of that decision under sections 37–90–115, C.R.S.1973 (1982 Supp.) and 24–4–106, C.R.S.1973 (1982 Repl.Vol. 10). We believe that the trial judge was correct under the statutes in effect prior to the repeal and reenactment of section 37–90–115 by Colo.Sess.Laws 1983, ch. ——, 37–90–115 at —— (House Bill No. 1310, approved June 10, 1983) (the 1983 Revision). We first address the law as it existed before the adoption of the 1983 Revision and then consider the effect of that new legislation.

A number of parties vigorously assert that review of the state engineer's decision with respect to issuance of a well permit for nontributary water must be sought in the water court because it involves a "water matter." This position, however, is squarely contrary to section 37–90–115, as it read prior to the 1983 Revision. That section provided:

Any party, including ground water management districts, adversely affected or aggrieved by *any action of the* ground water commission or the *state engineer*

*under the provisions of this article* may obtain judicial review of such action pursuant to the provisions of section 24–4–106, C.R.S.1973, except that venue shall lie in the county in which the water rights are located. (Emphasis added). *Cf.* section 37–90–114, C.R.S.1973 (general assembly used explicit language when it wished to exclude state engineer action from review by ground water commission). Furthermore, as previously mentioned, the entire plan and purpose of the 1969 Act is to provide a framework for adjudication and administration of *tributary* waters.

Some of the objectors argue that the state engineer's procedures for issuance of well permits are so informal that judicial review under section 24–4–106 will not be feasible because of the inadequacy of the record. Should this be so, we believe that the appropriate remedy will be a remand to the state engineer with directions to proceed in a manner that will produce a sufficient record to permit implementation of effective administrative review. In any event the asserted deficiency in administrative procedures is not a basis to ignore the review procedure plainly prescribed by section 37–90–115 and to authorize in its stead a review of the state engineer's action by the water court under the 1969 Act.

The 1983 Revision repealed section 37–90–115 and reenacted it to provide, in relevant part:

Any party, including a ground water management district, adversely affected or aggrieved by any decision or act of the ground water commission under the provisions of this article or by a decision or act of the state engineer under section 37–90–110 [33] may take an appeal to the

---

**31.** Colo.Sess.Laws 1973, ch. 441, § 1, p. 1520.

**32.** Section 37–90–137(4) provides in pertinent part:

[I]n considering whether the permit shall be issued, only that quantity of water underlying the land owned by the applicant or by the owners of the area, by their consent, to be served is considered to be unappropriated; the minimum useful life of the aquifer is one hundred years, assuming that there is no substantial artificial recharge within said pe-

riod; and no material injury to vested water rights would result from the issuance of said permit. The state engineer may adopt rules and regulations to assist in, but not as a prerequisite to, the granting or denial of permits to construct wells and for the administration of this underground water.

**33.** Section 37–90–110, C.R.S.1973 empowers the state engineer to require all flowing wells to be equipped with valves, to require all wells to be constructed and maintained so as to prevent

district court in the county wherein the water rights or wells involved are situated.

The 1983 Revision is silent concerning review of actions of the state engineer under section 37–90–137, providing for issuance or denial of well permits. This recent legislation was enacted after the trial court entered judgment and so was not considered by the special water judge. The effect of the 1983 Revision procedures for review of state engineer action under section 37–90–137 was not briefed or argued before this court. Accordingly, we believe it prudent to express no opinion on the question of review of state engineer action under section 37–90–137 subsequent to the effective date of the 1983 Revision.

■ An additional question with respect to water court review of state engineer action on well permit applications may arise in connection with proceedings in water court to determine whether water is tributary or nontributary. We believe that, by necessary implication under the 1969 Act, the water court can entertain a proceeding to establish whether water outside the boundaries of designated ground water basins is tributary, so that rights may be obtained by appropriation and confirmed by adjudication under the 1969 Act, or nontributary, so that the well permit criteria of section 37–90–137(4) apply.[34] *Cf. Gardner*

*v. State, supra* (applications for determination of abandonment of water rights are within the water court's jurisdiction); *District 10 Water Users Ass'n v. Barnett, supra* (water court's jurisdiction to determine whether water is tributary was assumed in a case where the jurisdictional issue was not raised); *Kuiper v. Well Owners Conservation Ass'n, supra* (action to determine validity of state engineer's rules and regulations with respect to administration under the 1969 Act is within water court jurisdiction). Such a procedure will permit this matter of central importance to the identification of water subject to adjudication and administration under the 1969 Act to be resolved by the water judges in a hearing in which all interested parties will have notice and an opportunity to participate.[35] *See* section 37–92–302. We do not believe, however, that such a proceeding provides a basis for the water court to review the state engineer's action on an application for a well permit relating to nontributary ground water under section 37–90–137(4). A holding to the contrary would allow this procedure to swallow the rule so clearly established by section 37–90–115, prior to the 1983 Revision, that administrative review of state engineer action with respect to well permits should proceed under section 24–4–106.[36]

waste, to inspect wells, to order cessation of well use pending correction of defects, to commence actions to enjoin the illegal opening or excavation of wells or withdrawal or use of water therefrom, and to take action to enforce compliance with regulations, controls, or orders of the ground water commission.

34. *See* note 20, *supra.*

35. We recognize the potential for conflict between water court determinations of tributariness and determinations made by the state engineer under section 37–90–137 and reviewed by a district court under section 24–4–106, prior to the 1983 Revision. We reserve for another day the question how any such conflict should be resolved. Compare *State ex rel. Danielson v. Vickroy, supra,* in which we held that "it is appropriate as a matter of policy, and is consistent with legislative intent, to require that any relief sought which involves the taking of ground water in a designated ground

water basin must be sought first through the administrative and judicial channels, as appropriate, prescribed for resolution of questions arising under the [1965 Act]." 627 P.2d at 760. The possibility of conflicts with respect to determinations of tributariness under the well permit procedures and the 1969 Act is a subject that might well benefit from attention by the general assembly.

36. It is unnecessary in the present proceeding to determine the effect of section 37–92–305(6), C.R.S.1973 upon the pre-1983 Revision procedure for review of state engineer action on applications for well permits to tap tributary ground water. We note the tension between the function of the water judge in adjudicating claims involving tributary water wells, *see* sections 37–92–302(2) and 37–92–305(6), and the procedures for review of state engineer action prescribed in section 37–90–115, prior to the 1983 Revision, but express no opinion on that subject. *See Bohn v. Kuiper,* 195 Colo. 17, 575

██ A number of the objectors argue that provisions for issuance of well permits to extract nontributary ground water outside designated basins under the 1965 Act are inconsistent with or constrained by the landowners' property rights in such water underlying their lands. The proponents of this view argue that this water was not "severed" from the realty at the time the federal government patented the lands to private owners. This argument is answered by our previous discussion of the federal scheme for transfer of public domain lands, whereby the states were granted broad authority to provide for the use of nonnavigable waters within their borders. Also relevant to the conclusion that the United States did not convey the ground water with the land is "the established rule that land grants are construed favorably to the Government, that nothing passes except what is conveyed in clear language, and that if there are doubts they are resolved for the Government, not against it." *United States v. Union Pacific Railroad Co.,* 353 U.S. 112, 116, 77 S.Ct. 685, 687, 1 L.Ed.2d 693 (1957) (quoted with approval in *Watt v. Western Nuclear, Inc.,* —— U.S. ——, ——, 103 S.Ct. 2218, 2231, 76 L.Ed.2d 400 (1983)).

Proponents of the private ownership theory also argue that *Whitten v. Coit, supra,* dictates the result for which they contend.[37] We do not agree for two reasons. First, the language of *Whitten v. Coit* upon which the case for private ownership of nontributary ground water is predicated was not necessary to the decision, and we are not bound by it. *See, e.g., Radke v. Union Pacific*

*Railroad Co.,* 138 Colo. 189, 334 P.2d 1077 (1958); *Parker v. Plympton,* 85 Colo. 87, 273 P. 1030 (1928). Second, and more importantly, we believe that, given the state's plenary control over development of water law, the traditional property concept of fee ownership is of limited usefulness as applied to nontributary ground water and serves to mislead rather than to advance understanding in considering public and private rights to utilization of this unique resource.

In *Whitten v. Coit,* we held that a district court decree adjudicating priorities to nontributary ground water under the procedures of the Water Adjudication Act of 1943 was void for lack of jurisdiction because that Act, like the 1969 Act, applies only to tributary water. While the question of a landowner's interest in nontributary water underlying his property was not before us, we cited with approval the following passage from an article by William R. Kelly in 31 Rocky Mountain Law Review 165, 171 (1959):

> The landowner has property in the water in his soil. It is a vested right which cannot be taken away by mere legislation. It is subject only to the reasonable use doctrine. If the ground water is in motion so as to be tributary to a natural stream, or part of the stream water table, it has always been subject to priorities of appropriation on the natural stream. But unless it is tributary to the natural stream, it is not subject to the law of appropriation.

P.2d 402 (1978) (we reversed a conditional water right decree granted after the state engineer denied a well permit; no issue was raised ·as to the possible applicability of section 37–90–115). Section 37–92–305(6) provides:

> In the case of an application for determination of a water right or a conditional water right, a determination with respect to a change of a water right or approval of a plan for augmentation, which requires construction of a well, the referee or the water judge, as the case may be, shall consider the findings of the state engineer, made pursuant to section 37–90–137, which granted or denied the well permit, and may grant a conditional

> decree unless a denial of such permit was justified under said section, and in case a final decree or conditional decree is granted by the court, the state engineer shall issue said permit.

**37.** Most of the private ownership proponents concede that section 37–90–137(4) is supportable as a reasonable regulation of property usage, analogous to zoning laws. The private ownership question, however, has implications for the extent of permissible state legislation with respect to nontributary ground water. The issue has been fully and admirably briefed, and we elect to address it as necessary to a full development of the answers to Q1 and Q2.

153 Colo. at 174, 385 P.2d at 140. The author stated this conclusion as a doctrinal base to legitimize the long-existing practice of farmers to sink wells on their property and to make reasonable use of the ground water. To the extent the concept of the landowner's property right extends no further than to recognize a basis in law to support this past practice, in absence of statutory or constitutional constraints, we find it unexceptionable. *See Town of Chino Valley v. City of Prescott,* 131 Ariz. 78, 638 P.2d 1324 (1981), *appeal dismissed,* —— U.S. ——, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982). To the extent, however, that it is understood to recognize in a landowner an interest in nontributary water coextensive with rights of ownership of other interests in real property we consider the description inaccurate and now repudiate it.[38]

When Congress elected to patent land separately from water and to allow the states "to legislate in respect of waters and water rights as they deem wise in the public interest," *California Oregon Power Co.,* 295 U.S. at 163, 55 S.Ct. at 731, it made no distinction between tributary and nontribu-tary waters. *See generally Andrus v. Charlestone Stone Products, Inc., supra; California v. United States, supra; California Oregon Power Co.; United States v. City and County of Denver, supra.*[39] Until the enactment of the 1965 Act and the subsequent amendment of that act by addition of section 37–90–137(4), the general assembly had exercised only minimally its power to create law governing the acquisition of rights in nontributary water. *See* Colorado Ground Water Act of 1957. Nor, until the *Whitten v. Coit* dictum, had this court definitively announced any common law with respect to rights in nontributary water. Indeed, in *Safranek v. Town of Limon, supra,* a case not cited in that portion of *Whitten v. Coit* discussing the nature of ownership rights in nontributary ground water, we voiced doubt about the nature of the rights that should be recognized in this resource, expressed disapproval of the doctrine of ownership of such waters by the surface owner, and expressly reserved for future determination the nature of the rights to be recognized in nontributary water.[40] We note that other states

---

**38.** One of the supplemental questions that we authorized the trial court to consider was:

> Is the owner in fee of the surface land also the owner of the non-tributary ground water lying under the land by virtue of his capacity as an owner or is such water to be claimed and decreed in accordance with the doctrine of appropriation by such owner?

The special water judge expressed the view that a landowner does not have fee ownership in nontributary water underlying his property but has a first right of development because landowner consent is essential to obtain rights in such water, as set forth in the trial court's answer to Q3. We do not reach Q3, and we analyze the ownership question differently than did the trial judge, as explained in this opinion.

**39.** The New Mexico Supreme Court has held that the patents from the United States to public lands issued after 1866, and particularly those issued after the Desert Land Act of 1877, ... conveyed no interest in, or right to, the use of surface or underlying water with which lands could be irrigated, except such portions thereof as were used to reclaim the particular land applied for under the Act. *State ex rel. Bliss v. Dority,* 55 N.M. 12, 19–20, 225 P.2d 1007, 1012 (1950). Noting that the Desert Land Act of 1877 "provided that all waters *upon* the public lands (except navigable waters) were to remain ... free for the appropriation and use of the public," that court held, "[i]t was not intended to be taken literally that such waters must be upon the surface of the earth to be subject to such use." (Emphasis in original.) 55 N.M. at 27, 225 P.2d at 1016.

Furthermore, in light of the extensive line of United States Supreme Court cases acknowledging the authority of the states to adopt their own systems of water law, we find unconvincing the argument of objector CF & I Steel Corporation and others that the Pittman Underground Water Act, 43 U.S.C. §§ 351 to 360 (1976) (repealed by Pub.L. No. 88–417, 78 Stat. 389 (1964) and Pub.L. No. 94–579, 90 Stat. 2789 (1976)), relating to issuance of permits to explore for ground water in arid lands owned by the United States in Nevada, reflects that the policy of allowing the states to develop their own systems of water law is inapplicable to nontributary ground water.

**40.** In *Safranek v. Town of Limon, supra,* we said:

> Had it been established by the record in this case that the water diverted by the town was nontributary ground water, such as an underground lake, the waters of which are not a part or source of a natural stream, still the

with scarce water supplies have rejected an absolute private ownership theory with respect to ground water. *Town of Chino Valley v. City of Prescott, supra; Baker v. Ore-Ida Foods, Inc.,* 95 Idaho 575, 513 P.2d 627 (1973); *State ex rel. Bliss v. Dority,* 55 N.M. 12, 225 P.2d 1007 (1950), *appeal dismissed,* 341 U.S. 924, 71 S.Ct. 798, 95 L.Ed. 1356 (1951); *Baeth v. Hoisveen,* 157 N.W.2d 728 (N.D.1968); *Knight v. Grimes,* 80 S.D. 517, 127 N.W.2d 708 (1964); cf. *Williams v. City of Wichita,* 190 Kan. 317, 374 P.2d 578 (1962), *appeal dismissed,* 375 U.S. 7, 84 S.Ct. 46, 11 L.Ed.2d 38 (1963) (same result in riparian rights state not subject to Desert Land Act of 1877); *J.J.N.P. Co. v. State,* 655 P.2d 1133 (Utah 1982) (same result based on statute). We believe that the Colorado legislature in enacting the 1965 Act and adding section 37–90–137(4) exercised its power—long recognized but previously virtually dormant—to legislate concerning nontributary waters.[41] The state interest in providing a system for utilization of this depletable and vital resource can scarcely be doubted. *See California*

*Oregon Power Co.,* 295 U.S. at 165, 55 S.Ct. at 732; *Town of Chino Valley v. City of Prescott, supra; Knight v. Grimes, supra.* The legislative action reflected in the 1965 Act and section 37–90–137(4) is fully sanctioned by the long-continuing policy of Congress to allow the states to develop their own water law, and is not constrained by any claimed private rights of ownership derived under federal patents.

We recognize, however, that many landowners may have come to rely on wells tapping nontributary sources based on local custom, well permits, and judicial decrees. We express no opinion on the scope of those rights or the extent to which the 1965 Act, including section 37–90–137(4), can be applied to limit them. We believe those questions must be answered in the context of specific facts developed in contested cases.[42]

4. *Summary of Our Resolution of Q1 and Q2 and Resulting Disposition of Claims*

The foregoing exposition of the development of Colorado water law and the present statutory scheme provides the reasoning be-

above-quoted statement upon which counsel for respondents base their claim for ownership of the water would not be a correct statement of Colorado law. [The statement referred to is: "In this State percolating subsurface waters, not tributary to any stream, are the property of the owner of the land, as at common law." 123 Colo. at 334, 228 P.2d at 977]. We have long since departed from the English common-law doctrine of ownership of percolating waters by the surface owner, *Nevius v. Smith, supra,* and we would, in such case, be confronted with the question upon which there is an absence of statutory law in Colorado as well as of direct decision by our courts. Whether in such case we should follow the California doctrine of reciprocal rights, developed from its law of riparian rights, or whether we should extend one step further our Colorado doctrine of first in time, first in right, need not now be determined. The question is neither argued nor presented by the facts before us, .... *Safranek v. Town of Limon, supra,* 123 Colo. at 335–336, 228 P.2d at 978. The subject of the nature and source of rights in nontributary ground water has provided fertile soil for law review commentary. *See, e.g.,* Martz, *Who Has the Better Right to Non-Tributary Ground Waters in Colorado—Landowner or Appropriator?,* 31 Dicta 20 (1954); McHendrie, *The Law*

*of Underground Water,* 13 Rocky Mtn.L.Rev. 1 (1940).

**41.** In 1979 the general assembly expressly asserted that it has the power to legislate with respect to administration and use of nontributary waters. Section 37–82–101(1), C.R.S.1973 (1982 Supp.), provides in pertinent part:

> All waters not in or tributary to a natural stream ... shall be subject to such administration and use as the general assembly may provide by law.

This repealed and reenacted a 1969 Act suggesting that such waters were subject to appropriation. Section 37–82–101, C.R.S.1973, based on Colo.Sess.Laws 1969, ch. 373, § 2, p. 1219.

**42.** In 1983 the general assembly amended section 37–90–137 by the addition of subsection (5), which relates to the applicability of section 37–90–137(4) to certain early wells. Colo.Sess. Laws 1983, ch. ——, 37–90–137(5) at —— (House Bill No. 1440, approved May 23, 1983). That legislation provides:

> Any right to the use of ground water entitling its owner or user to construct a well, which right was initiated prior to July 6, 1973, as evidenced by an unexpired well permit issued prior to July 6, 1973, or a current decree, shall not be subject to the provisions of subsection (4) of this section.

hind our answers to the key questions Q1 and Q2, which we now summarize. Nontributary ground water is not subject to appropriation under *Colo. Const.* Art. XVI, §§ 5 and 6, or to adjudication or administration under the 1969 Act. The modified doctrine of prior appropriation provided for in the 1965 Act applies to nontributary ground water, and rights to such water in designated ground water basins must be obtained through the procedures established in that Act. Rights to nontributary ground water not located in a designated basin may be obtained only through application for a well permit from the state engineer under section 37–90–137 of the 1965 Act. Review of the state engineer's action on well permit applications could be obtained under section 24–4–106, as prescribed by section 37–90–115, for appeals taken before the 1983 Revision became applicable. We express no opinion on the procedure for review of state engineer action under section 37–90–137 after the 1983 Revision was enacted.

Because adjudication procedures in the 1969 Act do not apply to nontributary ground water, all of the applications for determinations of rights in such water filed in the water court and consolidated for the purposes of the present case must be dismissed. Leave should be granted, however, to amend those applications to seek a determination from the respective water judges as to the tributary or nontributary nature of the water sought, should the parties wish to request such determinations. All of the applications for tributary water were properly filed in water court under the provisions of the 1969 Act, and such claims are remanded to the respective water divisions for further proceedings. That part of the trial court's ruling allowing remand of claims for tributary water is affirmed, and that part dismissing tributary water claims is reversed for the reasons set forth in part III of this opinion.

### B. *Disposition of Q3 through Q5*

Our disposition of the issues presented by Q1 and Q2 makes it unnecessary to consider the remaining three questions. In answer to Q3, the special water judge ruled that a person having no property interest in the surface of the land may appropriate nontributary water underlying it only with the consent of the landowner to erect and operate the necessary physical works for extraction of the water. Responding to Q4, the judge held that nontributary ground water outside designated basins may be appropriated for use by persons other than the claimant, but that the appropriator must have beneficial uses at hand, existing actual need, or a contract or agency relationship with those having such existing need and beneficial uses in mind. In light of our dismissal of all applications filed in the water court for adjudication of rights to nontributary ground water outside of designated basins, we decline to express any view on the issues raised by Q3 and Q4 because our statements would be merely advisory. We recognize that these questions could become relevant in the context of specific applications that may be refiled with the state engineer. However, absent concrete factual contexts for application of these legal questions, we decline to answer them in the abstract because of the impossibility of foreseeing and providing for every possible type of arrangement between applicants and landowners or between applicants and users of the water. *See generally, Illinois v. Gates,* —— U.S. ——, ——, 103 S.Ct. 2317, 2325, 76 L.Ed.2d 527 (1983).

■ The remaining question, Q5, poses the issue of whether applications for nontributary ground water outside of designated basins may be filed without first obtaining a permit from the state engineer. The special water judge held that applications for nontributary ground water must follow a procedure whereby the applicant first obtains a well permit from the state engineer, or secures appellate reversal of the state engineer's denial of a permit, and then files an application in an adjudication proceeding in water court under the 1969 Act. Further, the special water judge held that if it clearly appears that the priority date for a particular calendar year may be lost (*see* section 37–92–306, C.R.S.1973), then the application could be filed in water court and

the hearing deferred until the state engineer acts and appellate procedures are concluded. Contrary to the ruling of the special water judge, we hold that the procedures of the 1969 Act do not apply to nontributary ground water outside designated basins and that the only statutory means available for obtaining rights to such water is application for a well permit from the state engineer under section 37–90–137.

■ The trial judge applied his answer to Q5 to the class VII claims for tributary ground water in remanding such claims for further proceedings in Division 7. This ruling may cause confusion on remand because Q5 relates only to nontributary ground water, so we elect to clarify the procedures required in securing a determination of water rights in tributary ground water. Section 37–92–302(2) provides that the water court shall not enter a decision on an application for determination of a water right requiring the construction of a well until the claimant supplements the application with a permit to construct a well, issued by the state engineer under section 37–90–137, or evidence of its denial or of failure of the state engineer to grant or deny the permit within six months. We do not read this statute to require the applicant to obtain the well permit prior to filing an application in water court. The claimant may file in the water court to protect his priority date while an application to construct a well is pending before the state engineer. The water court is merely prohibited from entering a final decision on that application before the state engineer's decision is rendered or that official fails to grant or deny a permit within six months after application is made. This construction of section 37–92–302(2) is consistent with section 37–92–305(6), which requires the water court to consider the findings made by the state engineer in that official's decision to grant or deny the well permit.[43] Accordingly, the water court is not deprived of jurisdiction over the class VII claims for

tributary water on remand even if applications for well permits under section 37–90–137 are still pending at that time.

## III. TRIBUTARY GROUND WATER CLAIMS

■ We now consider the trial court's dismissal of those applications for tributary ground water that are appealed. Because we conclude that the claims for nontributary ground water must be dismissed for lack of jurisdiction in the water court, we need not consider the other grounds for their dismissal relied on by the special water judge. However, since the claims for tributary water were filed in the correct forum, we are required to review the trial court's reasons for dismissing them.

The representative claims from classes I, III and VII seek determination of rights to tributary ground water as well as to nontributary ground water. The class VII claims for tributary water were not dismissed. Of the remaining two classes, only the joint venture Bluepond Associates, the applicant for all seventy-two claims comprising class I, appeals the trial court's dismissal of its applications for tributary water. By reason of the procedure employed by the special water judge for classifying all of the applications into eight groups and choosing to review only a representative claim from each, it is not clear from the record whether applications for tributary water were included within some of the other classes and inadvertently dismissed in the trial court's ruling on the representative claims. To avoid prejudice resulting from possible inadvertent dismissal of such claims, our disposition of the class I applications for tributary water applies as well to all other applications involving tributary water that were dismissed by the trial court and appealed by the claimants.

The class I claimant requests decrees for underground water storage where a naturally occurring glacial terminal moraine

---

**43.** As earlier mentioned, there is a tension between section 37–90–115, as it read prior to the 1983 Revision, prescribing review of state engineer well permit decisions under section 24–4–106, and section 37–92–305(6), requiring a water judge to consider such decisions before entering a decree for a water right involving diversion by well. See note 36, supra.

creates an underground dam. Each storage area lies directly under a surface flowing river or stream. The claimant proposes to withdraw the water presently held in these underground reservoirs, release it into the overlying streams, and obtain storage decrees permitting it to refill these reservoirs from the surface streams to the capacity created by the initial pumping. The special water judge dismissed all applications within class I on two grounds. First, the judge stated that the methods proposed by the claimant were infeasible and would necessarily affect the surface stream flow and existing decreed appropriations.[44] Second, the judge found that the representative application requests vast quantities of water for beneficial uses stated in the broadest terms and that, therefore, the claims were merely speculative and made for the purpose of profit.

In ruling on the class I claims, the special water judge considered only the representative application, oral argument, legal briefs and exhibits, and treated the proceeding as one in the nature of a motion to dismiss or for summary judgment. The trial court declined to consider "Hypothetical Fact Situations and/or Offers of Proof" filed by the class I applicant when members of the trial committee challenged that document with a motion to strike. The court did not hold an evidentiary hearing on the class I representative claim or the other applications in that class to determine whether the method for implementing the proposed storage right was feasible and to determine with more specificity the exact uses for the water. We believe that the approach taken by the trial court was incorrect and unfairly places a burden on the applicant not contemplated by the statutory scheme for adjudication of rights to tributary ground water.

Section 37–92–302 of the 1969 Act sets forth the procedure for applying for a determination of rights to tributary water and requires the inclusion of certain information in standard application forms. Subsection (2) of section 37–92–302 states that the application shall contain "a legal description of the diversion or proposed diversion, a description of the source of the water, the date of the initiation of the appropriation or proposed appropriation, the amount of water claimed, and the use or proposed use of the water." Our review of the class I representative application shows that it contains all the basic information required by statute. Dismissal of the class I claims based on the general information contained in the representative application and oral argument by the claimant penalizes it for following statutory application procedures. The record before us does not contain sufficient information to support the trial court's ruling that the class I claims are infeasible and speculative. *See, e.g., Hatfield v. Barnes,* 115 Colo. 30, 168 P.2d 552 (1946) (motion for summary judgment should be denied if a genuine issue of fact is apparent); *cf. Bunger v. Uncompahgre Valley Water Users Ass'n, supra* (based on reference to depositions, the facts supporting dismissal of the claims as speculative on motion for summary judgment were "clear and undisputed"). We reverse the trial court's dismissal of these claims and remand them to the appropriate water divisions for further proceedings.

## IV. MISCELLANEOUS RULINGS

### A. *Dust Control and Land Reclamation as Beneficial Uses*

■ The class VII claimants, asserting rights to withdraw both tributary and nontributary ground water, challenge the ruling of the special water judge concerning their applications that neither dust control nor land reclamation is a beneficial use. The judge based his conclusion on the fact that no Colorado cases have involved an appropriation of water for these purposes and that, therefore, such beneficial uses

---

**44.** One of the supplemental questions that we authorized the special water judge to consider was:

Can a decree be obtained for a right to store tributary water in an underground reservoir created by the impoundment of water behind a naturally occurring glacial terminal moraine?

have never been approved. We disagree with the judge's conclusion that dust control and land reclamation are not beneficial uses as a matter of law and reverse this aspect of the trial court's decision.

With respect to the applicants' claims for tributary water, the cases and statutes implementing the constitutional right to appropriate such water supply the framework for determining which uses are "beneficial." The Colorado Constitution specifically recognizes three types of beneficial uses that will support an appropriation of tributary water: domestic, agricultural and manufacturing. *Colo. Const.* Art. XVI, § 6. However, our cases have held that appropriations of tributary water are not limited to those examples given in the constitution. In *City and County of Denver v. Sheriff*, 105 Colo. 193, 96 P.2d 836 (1939), we stated:

> The term "beneficial use" is not defined in the Constitution. What is beneficial use, after all, is a question of fact and depends upon the circumstances in each case.

105 Colo. at 204, 96 P.2d at 842. Thus, we have recognized municipal use, which includes a variety of uses incident to governmental activities, as a beneficial use. *City of Westminster v. Church*, 167 Colo. 1, 445 P.2d 52 (1968). Consistent with this flexible approach taken in the case law, section 37–92–103(4) of the 1969 Act provides the following expansive definition of beneficial use for implementation of the constitutional right to appropriate waters of the state:

> "Beneficial use" is the use of that amount of water that is reasonable and appropriate under reasonably efficient practices to accomplish without waste the purpose for which the appropriation is lawfully made and, without limiting the generality of the foregoing, includes the impoundment of water for recreational purposes, including fishery or wildlife. For the benefit and enjoyment of present and future generations, "beneficial use" shall

also include the appropriation by the state of Colorado in the manner prescribed by law of such minimum flows between specific points or levels for and on natural streams and lakes as are required to preserve the natural environment to a reasonable degree.

In addition, the general assembly has recognized the beneficial nature of both land reclamation and dust control in other statutory enactments. Those engaged in mining are required by various statutes to reclaim land adversely affected by such activity. *See* Colorado Mined Land Reclamation Act, sections 34–32–101 to –125, C.R.S.1973 (1982 Supp.); Colorado Surface Coal Mining Reclamation Act, sections 34–33–101 to –137, C.R.S.1973 (1982 Supp.);[45] *see also* Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201 to 1328 (Supp. I 1977 & Supp. V 1981). Similarly, the prevention of air pollution by dust (or "particulate matter") has been provided for in the Colorado Air Quality Control Act, sections 25–7–101 to –305, C.R.S.1973 (1982 Repl. Vol. 11); *see CF & I Steel Corp. v. Colorado Air Pollution Control Commission*, 199 Colo. 270, 610 P.2d 85 (1980). Moreover, section 34–29–107, C.R.S.1973 requires a coal mine owner to utilize "water, water with a wetting agent added to it, or some other effective method" to allay excessive coal dust, as a safety measure. *See also* 30 U.S.C. § 842 (1976 & Supp. IV 1980). In light of the flexible approach taken in the case law toward application of the "beneficial use" concept, and given the legislative expressions of concern for reclamation of mined land and abatement of dust pollution, we believe that land reclamation and dust control are beneficial uses.

With respect to the applicants' claims for nontributary water, our conclusion is the same. The 1965 Act expressly requires that the applicant for nontributary water rights, whether within or without a designated ba-

---

**45.** *But see* section 34–33–136. Our citation of these reclamation acts is only for the purpose of demonstrating the bases of our conclusion that land reclamation is a "beneficial use." The statutory mandate to reclaim land affected

by mining does not supply authority for persons seeking water rights for this purpose to affect adversely the vested water rights of others.

sin, must state the "beneficial use" to which the water will be applied. Sections 37–90–107, –108, and –137. While the 1965 Act does not provide a definition of beneficial use, *see* section 37–90–103, the general assembly incorporated that term into the Act aware that it had a well-established place in the legal terminology relative to tributary water rights. Although the legislature was at liberty to adopt different restrictions on the use of nontributary ground water, it chose instead to apply the same concept of beneficial use to such waters. Accordingly, we hold that land reclamation and dust control are proper beneficial uses for appropriations of tributary and nontributary water.

### B. *Federal Reserved Rights*

■ The United States appeals that portion of the trial court's decision stating that the federal government has no rights to water underlying lands reserved to it from the public domain. This ruling of the special water judge is not binding because the issue of federal reserved water rights was not before the trial court. We have since addressed the question of the nature and extent of federal reserved rights in *United States v. City and County of Denver, supra.* In that case, contrary to the opinion of the special water judge, we recognized the existence of federal reserved rights in certain circumstances and explained their nature and incidents. We therefore disapprove of the opinion expressed by the special water judge on this issue.

## V. CONCLUSION AND DISPOSITION

The judgment of the trial court is affirmed in part and reversed in part. We affirm that part of the trial court judgment dismissing certain applications for nontributary ground water but do so on the ground that the water court does not have jurisdiction over such applications. Accordingly, all such applications must be dismissed. Dismissal of these claims is without prejudice, and the claimants may file applications for well permits with the state engineer under section 37–90–137 and have leave to amend the applications to request water court determination of whether the water sought is nontributary, as claimed. Any desired appeals from a state engineer's decision taken prior to the time governed by the 1983 Revision must be made under the procedures set forth in sections 37–90–115 and 24–4–106.

The judgment of the trial court is affirmed to the extent that it ordered remand of the tributary water applications for further proceedings and reversed to the extent that it dismissed such claims. All applications for tributary ground water were properly filed in water court, and they are remanded for further proceedings in the respective water divisions. The water courts continue to have jurisdiction over such claims even if well permit applications with the state engineer under section 37–90–137 have not been finally acted upon.

That part of the trial court's judgment holding that dust control and land reclamation are not beneficial uses as a matter of law is reversed. Finally, we disapprove the trial court's expressions with regard to federal reserved water rights.

The cases are remanded to the respective water divisions in which they were filed for further proceedings consistent with the views expressed in this opinion.

### ON PETITIONS FOR REHEARING:

Certain parties have requested rehearing to argue the effect of legislation passed by the General Assembly subsequent to the issuance of our opinion in this case. We decline those requests but, on remand, direct the water judges to consider the applicability, validity and effect of those legislative enactments and their impact on our previous determination that the applications for nontributary ground water should be dismissed.

After the announcement of our opinion and while petitions for rehearing were pending, the Colorado legislature passed Senate Bill No. 439, and the Governor signed the new legislation on October 11, 1983. That act provides:

CONCERNING THE ADJUDICATION OF NONTRIBUTARY GROUND

WATER OUTSIDE OF DESIGNATED GROUND WATER BASINS.

*Be it enacted by the General Assembly of the State of Colorado:*

SECTION 1. 37–92–203(1), Colorado Revised Statutes, is amended to read:

37–92–203. *Water judges—jurisdiction.* (1) There is established in each water division the position of water judge of the district courts of all counties situated entirely or partly within the division. Said district courts collectively acting through the water judge have exclusive jurisdiction of water matters within the division, and no judge other than the one designated as a water judge shall act with respect to water matters in that division. Water matters shall include only those matters which this article and any other law shall specify to be heard by the water judge of the district courts. WATER MATTERS INCLUDE DETERMINATIONS OF RIGHTS TO NONTRIBUTARY GROUND WATER OUTSIDE OF DESIGNATED GROUND WATER BASINS. JUDGMENTS AND DECREES ENTERED PRIOR TO THE EFFECTIVE DATE OF THIS SUBSECTION (1), AS AMENDED, IN ACCORDANCE WITH THE PROCEDURES OF SECTIONS 37–92–302 TO 37–92–305 WITH RESPECT TO SUCH GROUND WATER SHALL BE GIVEN FULL EFFECT AND ENFORCED ACCORDING TO THE TERMS OF SUCH DECREES.[1]

SECTION 2. 37–90–137, Colorado Revised Statutes, as amended by House Bill No. 1440, enacted at the First Regular Session of the Fifty-fourth General Assembly and approved by the Governor on May 23, 1983, is amended BY THE ADDITION OF A NEW SUBSECTION to read:

37–90–137. *Permits to construct wells outside designated areas—fees—permit no ground water right—evidence—time limitation.* (6) Rights to nontributary ground water outside of designated ground water basins may be determined in accordance with the procedures of sections 37–92–302 to 37–92–305. Such proceedings may be commenced at any time and may include a determination of the right to such water for existing and future uses. Such determination shall be in accordance with subsections (4) and (5) of this section. Claims pending as of the effective date of this act which have been published pursuant to section 37–92–302 in the resume need not be republished.

SECTION 3. *Safety clause.* The general assembly hereby finds, determines, and declares that this act is necessary for the immediate preservation of the public peace, health, and safety.

Shortly after passage of Senate Bill No. 439, the two houses of the General Assembly adopted the following joint resolution:

*Be It Resolved by the House of Representatives of the Fifty-fourth General Assembly of the State of Colorado, the Senate concurring herein:*

That the General Assembly hereby finds and declares that its intention in enacting Senate Bill No. 439, enacted at the First Regular Session of the Fifty-fourth General Assembly, was that its provisions were procedural only, and that the provisions of section 37–90–137(4), Colorado Revised Statutes, shall continue to control the granting of permits for nontributary ground water outside of designated ground water basins.

House Joint Resolution No. 1038 (1983).

We took notice of these new developments on motions of some of the parties to this proceeding. In petitions filed after Senate Bill No. 439 was adopted, the parties have taken various positions concerning the validity and effect of the new legislation and have requested that we permit briefing and argument on the issues. We believe, however, that these questions will be better postured for appellate resolution after trial courts have been given an opportunity to consider them as they apply to particular cases. Therefore, we elect to deny the petitions for rehearing to the extent that they are based on the new legislation.

---

1. Capital letters indicate new material added to existing statutes.

In response to other matters raised in the petitions for rehearing, we have modified our opinion, and it will appear in the official reporter as modified. Except for the changes reflected in this opinion on petitions for rehearing and in the modifications, the petitions for rehearing are denied.

We also modify our judgment and directions to the water courts by reversing that part of the trial court judgment dismissing the applications for nontributary ground water, remanding those applications to the respective water divisions, and directing the water judges to consider whether those applications should be dismissed, or retained for further proceedings, in light of the legal principles set forth in our opinion and of Senate Bill No. 439 and House Joint Resolution No. 1038.